UNITED STATES of America,
Appellee,

v.

Milton Carl HESSE, Appellant.

No. 19574.

United States Court of Appeals
Eighth Circuit.

Oct. 22, 1969.

Louis Gilden, St. Louis, Mo., for appellant.

Daniel R. O'Neill, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., same address, on the brief.

Before VAN OOSTERHOUT, Chief Judge, and LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

This appeal arises from the defendant's conviction under 50 U.S.C.App. § 462 for failing to report for induction into the armed forces. Defendant basically claims he was (1) denied procedural due process in his reclassification from I–A–O to I–A, and (2) that there exists no basis-in-fact for his I–A classification. The district court denied defendant's motion for acquittal and found him guilty of the offense charged. 293 F.Supp. 991 (E.D. Mo. 1968). We hold that defendant's selective service file demonstrates no basis-in-fact for his reclassification to a I–A status. We reverse.

Defendant, at age 18, registered with his local board on April 13, 1964. At that time he filled out Selective Service Form 150 asserting that he was a conscientious objector. He stated that he was a member of the Radio Church of God and had become so when he first attended the church in New Athens, Illinois, on August 21, 1963. In his application he acknowledged the existence of a Supreme Being and because of his religious beliefs would refuse to use force or to kill. He wrote his beliefs in detail and premised them upon his religious teachings. He quoted from the church constitution which forbids the taking of human life. He quoted various scriptural passages.

Based upon this application, his local board classified him I–A–O (eligible for noncombatant military service). The defendant, seeking a I–O classification, appealed this ruling. Under the then existent Selective Service regulations, 32 C.F.R. § 1626.25 (1954), and statute, 50 U.S.C.App. § 456(j) (1951), the appeals board, while tentatively affirming his I–A–O classification, sought a Department of Justice investigation and recommendation. Following a standard procedure, a hearing officer conducted a personal interview of the defendant and made a written report to the Department. The F.B.I. investigated the defendant and a résumé of the investigation was made. On January 10, 1966, the Chief of the Conscientious Objector Section of the Department of Justice reported to the appeals board. He stated that the hearing officer concluded the registrant is not "conscientiously opposed to participate in combatant and noncombatant military training and service" and that "the résumé, on the whole, is consistent with the findings of the Hearing Officer." He then recommended that Hesse not be classified in Class I–O or in Class I–A–O. Nevertheless, the appeals board continued Hesse in Class I–A–O. The defendant was found physically fit and ordered to report for induction on May 31, 1966. He reported but refused to take the oath of induction. Thereafter, the United States attorney declined to prosecute since he was of the opinion that there was no basis-in-fact to support the I–A–O classification. He wrote the state director that the registrant was either I–A or I–O depending upon the sincerity of his convictions.

The state director, acting under 32 C.F.R. § 1625.3 (1969), requested the local board to reclassify the defendant. In a letter accompanying the request he called the board's attention to the Department of Justice recommendation that Hesse should not be in either Class I–O or I–A–O. On July 5, 1966, the local

board reclassified Hesse as I–A. Hesse appealed.[1]

Once again, the appeals board referred the matter to the Department of Justice for investigation and recommendation.[2] The same hearing officer who conducted the 1965 interview again conferred with the defendant. Another F.B.I. investigation was also made. On October 23, 1967, the same Department of Justice official who had authored the January 10, 1966, report, once again made the recommendation. The Department recommended on the basis of the hearing officer's interview and the résumé of the more recent F.B.I. investigation that Hesse had still not met his burden of showing that he was a conscientious objector. On December 4, 1967, the appeals board, presumably on the basis of the new investigation and recommendation, classified Hesse I–A. The defendant was once again ordered to report for induction, and once again refused. Prosecution and conviction ensued leading to this appeal.

The fundamental issue is whether there existed a basis-in-fact for the appeal board's I–A classification of December 4, 1967.

■ Since the appeals board determines the classification de novo (32 C.F.R. § 1626.26(a) (1969)), the only factors which could possibly have affected Hesse's classification was the 1967 investigative résumé and the Department of Justice's report and recommendation. We cannot accept defendant's contention that this résumé and recommendation could not be considered as additional facts related to classification. See United States v. Corliss, 173 F.Supp. 677 (S.D.N.Y. 1959), aff'd 280 F.2d 808 (2 Cir. 1960), distinguishing United States v. Stasevic, 117 F.Supp. 371 (S.D. N.Y. 1953). See also United States v. Nugent, supra; Simmons v. United States, supra; Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955); and Gonzales v. United States, supra.

However, this court is at a complete loss to understand the statements of the Department of Justice in both the 1965 and 1967 reports that the F.B.I. résumés "on the whole" are consistent with the hearing officer's finding that Hesse was insincere as to his conscientious objector claim.

■■ We are mindful that our jurisdiction to review is a narrow one. Whether there exists basis-in-fact for the defendant's classification is both a subjective and objective test. The obligation of review in this circuit has been construed to discount mere disbelief of a conscientious objector's claim without affirmative evidence to measure contradiction. Batterton v. United States, 260 F.2d 233 (8 Cir. 1958). Additionally we recognize as Judge Friendly said in United States v. Corliss, 280 F.2d 808, 814 (2 Cir. 1960):

"[T]hat although denial of exemption may be and often is supported by objective facts inconsistent with the claim, denial may also rest on a disbelief in the sincerity of the claim, unaccompanied by any inconsistent facts, provided the disbelief is honest and rational. * * * to sustain the denial of a claim on a mere *ipse dixit* of lack of sincerity from the Local Board or the hearing officer would create serious possibilities of abuse."

Mere speculation or conjecture as to insincerity is not enough. Witmer v.

---

1. No personal hearing was specifically requested nor was one granted. Local Board Memorandum No. 41 as now amended, which advises boards to give a preclassification interview to selectees requesting I–O classfication, was not yet promulgated. It was amended on July 30, 1968. Defendant claims denial of due process by reason of the lack of a personal hearing. We need not decide this issue here.

2. This procedure has now been deleted from the classification proceedings. Military Selective Service Act of 1967, 50 U.S.C.App. § 456(j). For full discussion of the old procedure see United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953). See also Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955).

United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). Nor can basis-in-fact in this case rest upon Hesse's doubtful demeanor. The only personal interview of Hesse was by the hearing officer and he is the only one who could assess evasive demeanor as a ground of insincerity. However, the hearing officer did not rely upon this ground. Cf. Parr v. United States, 272 F.2d 416 (9 Cir. 1959); United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y. 1968) (per Weinstein, J., an excellent authoritative opinion). There exists evidence that Hesse was nervous before the hearing officer but this fact alone is not evidence of doubtful demeanor. However, if there exists any inconsistency or honest or rational disbelief with the defendant's claim, then it is not for this court to weigh the substantiality of these facts to find any basis-in-fact. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). Cf. Esteban v. Central Missouri State College, 415 F. 2d 1077 n. 3 at 1092 (8 Cir. 1969) (dissenting opinion). Nevertheless, where disbelief is said to exist, the appellate court, in each case, must examine the board's alleged basis-in-fact to see whether it has any "rational" and "honest" foundation. Cf. United States v. Corliss, 280 F.2d 808 (2 Cir. 1960).

The appeals board was silent as to its reasons for changing Hesse's classification to I-A. We can only assume, by reason of its changed position, that it felt justified to follow the second recommendation of the Department of Justice. The problem is, however, that the Justice Department's recommendation was based in part upon gross error. After reporting that the hearing officer concluded the defendant was not sincere, the recommendation reads: "The Department of Justice believes that the résumé, on the whole, is not inconsistent with the findings of the Hearing Officer." Examination of the résumé markedly demonstrates to the contrary.

The résumé reveals that the F.B.I. interviewed officials of two former employers, six officials (including three supervisors) of his then present employer, a friend, a fellow worker, a relative, four neighbors, a town marshall, church members, defendant's pastor and assistant pastor. This investigation was much more extensive than the one which the F.B.I. conducted in 1965, and entailed many hours of interviews in at least three different cities. There does not exist within the entire résumé one statement which reflects a flaw upon the sincerity of Hesse's beliefs. The investigation verifies Hesse's good behavior and repeatedly states his sincere attitude as being conscientiously opposed, for religious reasons, to military service. The résumé shows that he refused to work on Saturday because of its religious significance, that he had attended church conferences as far away as Georgia and Texas despite giving up his pay for several workdays, that he was active in church work and that he had professed his sincerity and beliefs to many persons. Significant was a supervisor's statement that:

> "Registrant mentioned to him that he was a conscientious objector to the military service based on his religious beliefs. This reference stated that he [supervisor] is a member of the United States Army Reserve and feels that everyone has a responsibility to serve in the military service in some manner, however, he feels that the registrant is a genuine conscientious objector and that the registrant does not want to have anything to do with the Armed Forces. He tried to convince the registrant to go into the Armed Forces in a noncombatant status, but the registrant said he could not do so. He believes the registrant is sincere in his objections to military service and registrant has stated that he cannot go into the Army since any type of service contributes to death or killing. He recalled that the registrant said he attends the Radio Church of God."

Further analysis shows, in addition, that on the grounds set forth in the October 1967 recommendation there exists no rational" or "honest" basis for the hear-

ing officer to have doubted the sincerity of the defendant's claim. As the district court summarized, the hearing officer questioned defendant's sincerity because he found the registrant was not familiar with the doctrines and beliefs of the church. The district court further observed that the hearing officer found that the church opposed use of tobacco and that the defendant had not given up smoking until two weeks before the first hearing. Also the defendant was found to have made inconsistent statements to the hearing officer as to when he commenced tithing in the church.

■ Lack of knowledge of his church's doctrine has been held to cast sufficient doubt upon the sincerity of an alleged conscientious objector so as to constitute a basis-in-fact for a I–A classification. See e. g., Maynard v. United States, 409 F.2d 505 (9 Cir. 1968); Bishop v. United States, 412 F.2d 1064 (9 Cir. 1969).

However, where the basis upon which a hearing officer or draft board concludes a registrant's lack of knowledge rests upon arbitrary and irrational standards, the conclusion itself cannot stand. It is fundamental that each case deserves its own factual analysis.

■ In the 1967 interview the hearing officer doubted Hesse's sincerity because he did not know that it was unnecessary to be 21 years old in order to be a member of the church;[3] he could not give the correct chapter and verse for a biblical scripture that he had memorized;[4] Hesse stated he attended church from 9 to 10 a. m. on Saturday;[5] Hesse stated he was active in midweek church speech classes but a witness accompanying Hesse to the interview said the speech classes were "totally unrelated" to the church;[6] without the witness the defendant would have been thoroughly confused; Hesse was not able to define

---

3. It is not necessary to be a member of any organized church to sustain a claim of conscientious objector. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). See also Batterton v. United States, supra.

4. In the 1966 letter defendant was reported as quoting various scripture naming chapter and verse.

5. Hesse wrote the board this was incorrect. At the time of the interview he said he told the hearing officer he attended from 9 to 11 a.m.

6. This same witness contradicted this report in a subsequent letter to the board. His observations, relating to a young man's grasp of religious knowledge, must reflect rather accurately a true appraisal of young people and their religious beliefs:

    "To Whom It May Concern:

    "I was the witness for Milton Hesse on April 17, 1967. He informed me of the results of the hearing.

    "I was told that the hearing officer said that Mr. Hesse stumbled around and sounded unsure of himself. Milton is a rather nervous type person at times. I know, since I have attended a speech club with him for quite a while.

    "*However, at Milton's age, the church doesn't require that a person*

have a great deal of knowledge. And it seemed to me that some of the questions would be a little hard for any young fellow in the church to answer. (Emphasis ours.)

    "The hearing officer said that I stated that the speech club was totally unrelated to the church. Maybe I expressed myself badly, but the club is related. In fact, those that attend the club are almost invariably the strongest members of the church.

    "Milton does seem to me to know quite a lot about the church. Unless a person makes a good attempt in the church toward acquiring knowledge, and has the right attitude, the church won't allow them to be a member of the speech club.

    "This is true partly because it is a college level club and we are provided with college trained directors. The church simply can't afford to spend this time and money on people whom we consider to be insincere.

    "Milton has had very little of this type training in the past and he certainly needs a lot more training to gain more poise and lack of nervousness.

    "If you could take this into consideration in determining his sincerity, we would be deeply grateful. Thank you.

    "Sincerely,

    S/ Gerald Flurry

    "Gerald Flurry."

all of the church holidays and unable to state exactly when they occurred;[7] Hesse did not know whether anything in the church tenets forbade taking orders from officers or superiors.[8] The hearing officer also referred to his 1965 report stating that he still felt it was significant that Hesse had started going to church only shortly before he registered for the Selective Service and that Hesse had stopped smoking only three weeks before his first hearing in 1965.[9] The hearing officer also referred to the earlier interview where the registrant had given inconsistent statements as to when he had started to tithe.

■ The reasons given by the hearing officer in the Department of Justice's report do not serve as reasonable grounds to doubt a person's sincerity as a conscientious objector. The F.B.I. résumé, as well as the subsequent letters by the witness Flurry and the defendant Hesse, cast grave doubt upon the accuracy of the report of the hearing officer's interview. After the erroneous light cast upon the F.B.I. résumé by the author of the Justice Department's recommendation, a serious question arises on the record itself as to whether the hearing officer's interview has been inaccurately related.[10] Hesse's church receipts, voluntarily sent by him to the appeals board in order to accurately verify the dates he began tithing in his church, contradict that he intended any misrepresentation. These receipts constitute the best evidence to prove the dates and amount of his church donations. And whether a young man of 19 can accurately cite scripture quotations or define every church holiday is of little consequence to his religious convictions. Cf. United States v. Owen, 415 F.2d 383 (8 Cir. 1969). Were this not so, we imagine many persons of all denominations with sincere religious faith would find the door to God's Kingdom narrower than they thought.[11] To hold sincere religious conviction, one does not have to be a theologian.

We realize that the hearing officer was the only official who personally interviewed the defendant. Yet this fact should not be controlling when the conclusion of "insincerity" is based upon technicalities, some with doubtful verity, and the record as a whole completely contradicts the observations the hearing officer purportedly made. It is at best speculative to say on this record that the defendant is not possessed of sincere beliefs. Every person interviewed by the F.B.I., including employers, supervisors, associates and neighbors, verified this young man's sincerity as a conscientious objector. Under the record presented, we find that there was no justification for the appeals board to rely on the report of the Department of Justice and, therefore, there was no basis-in-fact for the I–A classification.

Reversed and remanded with direction to enter a judgment of acquittal.

7. Hesse, however, subsequently wrote the board that at the time of his interview, he read from prepared notes the names of the church holidays and their meaning, so he could be as accurate as possible. The fact that he read these to the hearing officer is not disclosed in the Justice Department's report.

8. However, Hesse stated he would follow orders as long as doing so did not conflict with his religious convictions.

9. If this is relevant, it would seem of greater significance that the defendant had not smoked since that time. Cf. Parr v. United States, 272 F.2d 416, 420 (9 Cir. 1959). No mention of this is made by the hearing officer.

10. The hearing officer's report is not included in his selective service file and was never shown to him. This in itself raises serious due process questions. See United States v. Purvis, 403 F.2d 555 (2 Cir. 1968); and cf. United States v. Owen, 415 F.2d 383 (8 Cir. 1969).

11. Even the Apostle Paul taught the Churches of Corinth that faith should not stand in wisdom. 1 Cor.2:5; and at Galatia, that faith is not found in obedience to church law, Gal. 3:12, or in works, Rom. 4:5.