William A. **PECKAT**, Appellee,

v.

Captain James **LUTZ** et al., Appellants.

No. 71–1132.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 27, 1971.

Decided Nov. 15, 1971.

Leonard M. Linton, Jr., Asst. U. S. Atty. (George Beall, U. S. Atty. on brief), for appellants.

Luther C. West, Baltimore, Md., for appellee.

Before SOBELOFF, Senior Circuit Judge, and WINTER and RUSSELL, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

The Government brings this appeal from the District Court's order granting habeas corpus to William A. Peckat, an enlisted serviceman who sought the writ after the Army denied his request for a discharge as a conscientious objector. The District Court held that Peckat had made out a *prima facie* case for a conscientious objector discharge, and that the Army, in rejecting his claim as insincere, had not met its burden of proof, for it gave no reasons for its conclusion. We agree with the District Court and affirm its order.

I

In seeking a discharge, Specialist Fourth Class Peckat's first obligation was to establish a *prima facie* case of conscientious objection. In March, 1970, in his application for discharge, Peckat stated the core of his religious philosophy as follows:

Jesus directed us to LOVE our neighbor as we would ourselves and to love God with all our mind, soul and body. Therefore, love for our neighbor cannot be shown if we intend to kill him, and we cannot love God if we do not love our neighbor. Members of the Armed Forces are trained to kill without pity. My very presence in the Army is in conflict with the teachings of Jesus. * * * Jesus did not kill anyone and He did not advocate killing. * * * As a Christian, therefore, I am not willing to take part in any activity which is directed towards killing.

Peckat's deep feelings about participation in the military allegedly crystallized after he went through basic training. He attained these views by way of "self examination and personal Bible study." [1] He stated that the catalyst in the development of his beliefs was his basic training in the Army, particularly his training in weapons, hand-to-hand combat, and the Army's movies and stories about Vietnam. He testified at his administrative hearing, "I find it impossible to point a weapon and pull the trigger."

In support of his own statement, Peckat submitted four sworn letters, including one from his minister, declaring that the writers knew him to be honest and sincere in his beliefs. Three other persons testified at the administrative hearing to the sincerity of his opposition to participation in military activity.

1. Peckat came from a devout home and was, as a teenager, the president of a religious youth group associated with his church (Lutheran, Missouri Synod).

■ The only possible weakness in Peckat's case was the timing of the claimed crystallization of his conscientious objection. At the time of his application for discharge, Peckat, stationed at Ft. George G. Meade, Maryland, had served for nearly 1½ years. Just prior to his application, he complained of "homesickness" to an Army psychiatrist, and requested a transfer so that he might be closer to his parents' home in Texas. This request was denied. The Judge below commented that he was not entirely convinced that Peckat was in fact sincere in his claim and acknowledged that the near concurrence of "homesickness" and the application for a conscientious objector discharge was a ground for suspicion. But the Judge held that this coincidence alone was not sufficient to dispel the affirmative evidence of sincerity which he found in the record. We agree. A feeling of homesickness is not inconsistent with the development of a sincere objection to participation in killing. *Cf.* United States ex rel. Brooks v. Clifford, 409 F.2d 700, 707 (4th Cir. 1969); Cohen v. Laird, 315 F.Supp. 1265, 1277 (D.S.C.1970); Ross v. McLaughlin, 308 F.Supp. 1019, 1024 (E.D.Va.1970).

■ The District Court was correct in holding that, by the facts he adduced, Peckat had made out a *prima facie* case for discharge as a conscientious objector. *See* United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966). The burden was thereby cast upon the Army to show, by affirmative evidence, that he did not sincerely hold his professed beliefs. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The officers passing on his claim must reach any conclusion of insincerity not by speculation or hunch but by a rational process. Bates v. Commander, 1st Coast Guard District, 413 F.2d 475, 478 (1st Cir. 1969); United States ex rel. Confield v. Tillson, 312 F. Supp. 831, 834 (D.Ga.1970); Ross v. McLaughlin, 308 F.Supp. 1019, 1023 (E.D. Va.1970). If the decision that a claimant is insincere is to be "rational," the evidence buttressing an officer's conclu-sion must be established in the record and cited as supporting his determination. As noted by the Second Circuit:

> [T]o sustain the denial of a claim on a mere *ipse dixit* of lack of sincerity from * * * the hearing officer would create serious possibilities of abuse.

United States v. Corliss, 280 F.2d 808, 814 (1960); *accord* United States v. Hesse, 417 F.2d 141, 143 (8th Cir. 1969). Accordingly, our circuit has held in a case arising out of a refusal by a draft board to classify a registrant as a con-scientious objector:

> Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is es-sential to the validity of an order to report that the board state its basis of decision and the *reasons therefore*, *i. e.*, whether it has found the regis-trant incredible, or insincere, or of bad faith, *and why*. (Emphasis added.)

United States v. Broyles, 423 F.2d 1299, 1304 (4th Cir. 1970); *accord* United States v. James, 417 F.2d 826 (4th Cir. 1969). This insistence upon explicitness is binding on the Army no less than on the Selective Service Administration. *See* Hammond v. Lenfest, 398 F.2d 705, 716 (2d Cir. 1968).

■ The articulation of reasons for a conclusion, which the decided cases de-mand, is not to be found in the Army's treatment of Peckat's application. His request for discharge traveled through several levels of administrative review, yet in making an adverse determination, no officer attempted to explain how he reached his conclusion by pointing to any evidence of insincerity. The mere asser-tion of disbelief in the claimant's sin-cerity, no matter how persistently that assertion is repeated, is not enough to overcome his *prima facie* case.

The Government now attempts to re-habilitate the decisions of these officers by constructing for each of them, from the evidence in the case, a reasoned opin-ion finding Peckat insincere. But the

Government misconceives the law in endeavoring to show at this late date that an opinion could have been written presenting a rational explanation for the officers' disbelief in Peckat's sincerity. The rule requiring that the officers themselves declare the reasons underlying their conclusions is designed to insure that they are not in fact deciding the case on some unlawful or arbitrary basis, for example a mistaken view of what the law calls for in the way of religious beliefs. As Judge Winter said in United States v. Broyles:

> [E]ffective review requires an explicit finding of insincerity if that is to be the sole basis for rejection of the conscientious objection claim. The *James* decision rested on the concept that "[w]here the local board's conclusion * * * may be explainable on alternate grounds, both legally acceptable and unacceptable, the risk is too great that we would place an imprimatur on an unsupportable basis of decision."

423 F.2d at 1303.

The instant case well illustrates the possible abuse if we were to accept the Government's approach. The Hearing Officer included in her findings of fact deprecating comments about the strength of Peckat's religious beliefs. She wrote:

> SP4 Peckat does not appear to be well read in religion, Philosophy or other matters. * * * He did not know that his Church had adopted a statement on conscientious objection until two months after he submitted his application. * * * Additionally, the frequency of his attendance, usually twice a month, at a Church of no particular denomination is not exactly indicative of strong religious beliefs.

All of the above recitals are irrelevant in testing Peckat's sincerity and conscientiousness in objecting to service in the Army. He never claimed to be well read in philosophy or religion; rather he claimed that his convictions matured from his own reading of the Bible. As the Eighth Circuit has observed, "to hold sincere religious conviction, one does not

have to be a theologian." United States v. Hesse, *supra*, 417 F.2d at 146. If Peckat were claiming a conscientious objection stemming from his affiliation with a particular sect, *cf.* Bishop v. United States, 412 F.2d 1064 (9th Cir. 1969), the frequency of his church attendance might be somewhat relevant. But because Peckat's beliefs grew out of his own Bible study and were not claimed to spring from church affiliation or attendance at services, the facts cited by the Hearing Officer are not at all indicative of the sincerity or the strength of his religious feelings.

■■ Furthermore, as the Supreme Court decided in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), a strongly held personal religious belief underpinning a sincere objection to participation in the military is sufficient to qualify one as a conscientious objector. Neither conformity with orthodox religion nor church membership or attendance is a proper test here. Indeed, *Seeger* was a more extreme case than this since that applicant for a conscientious objector classification declared his belief in "goodness and virtue for their own sakes and a religious faith in a purely ethical creed." He candidly confessed that he left the question of the existence of a Supreme Being "open" in his mind. Nevertheless, the Supreme Court held him eligible for conscientious objector status. Peckat, on the other hand, expressed a strong belief in God as taught in the Bible and went to church regularly, although perhaps not as often as the Hearing Officer would like. *A fortiori,* his mild unorthodoxy—if such it be—cannot disqualify him from discharge as a conscientious objector. Thus, the Hearing Officer's disparaging comments on Peckat's religious beliefs are an unacceptable and unlawful basis for her decision that Peckat entertained no sincere objection to participating in military service.

■ As a reviewing court, we must be given a clear indication that this impermissible basis did not color the Hearing Officer's ultimate finding. In this case

we are offered nothing but a naked conclusion of insincerity. Totally unavailing is government counsel's exercise of a belated second sight by undertaking to frame a rational statement of reasons that might have been given by the Army. The rationality of the Army's process in arriving at its conclusions must be made manifest in the decision itself. It will not do to leave the point in a state of ambiguity until some future day when government lawyers may devise an explanatory dissertation for inclusion in a defensive brief. We conclude that the District Court properly granted the writ.[2]

## II

The serviceman moved to dismiss the Government's appeal as moot because the Army had issued him an honorable discharge after the trial in the District Court and before this appeal was brought. The District Court's order of November 9, 1970 provided that Peckat should be released from military "custody and control" pending appeal. The court further provided that, if no appeal were taken or if the District Court's order were affirmed on appeal, the Army must accord him an appropriate discharge.

In prompt compliance with this order, the Department of the Army directed that the serviceman be "separated." "Separation" in the language of the Army regulations is a generic term which includes but is not limited to outright discharge, Army Regulations 635–200 (Personnel Separations) § 1–3(b), (d). Instead of a separation pending appeal, Peckat was issued an honorable discharge. The Government alleges that

this resulted from a "clerical error."[3] Two months after discharging Peckat the Government filed its appeal. Peckat's counsel moved to dismiss the appeal as moot since Peckat had already been honorably discharged. Thereafter, six months from the date of discharge and three months from the filing of its appeal, the Army sought to remedy its "mistake." Without affording Peckat a hearing, the Army cancelled his honorable discharge and substituted a separation order releasing him from military custody and control pending the appeal, as the District Judge had ordered.

Peckat denies the validity of the cancellation of the discharge, claiming that, once given, it cannot be rescinded. The Government maintains that the discharge, having been issued in error and contrary to a departmental command not to discharge Peckat, was void *ab initio*. The Government asserts that *ultra vires* acts by its officials are not binding because they carry no apparent authority in excess of their actual authority to bind the Government. The unilateral recision of the discharge may also make the Army's corrective action vulnerable.

The congeries of legal issues ensuing from Peckat's motion to dismiss the appeal as moot need not be resolved, for upon consideration of the appeal itself we have found it devoid of merit. Subject to review by the Supreme Court, our affirmance of the District Court's order finalizes Peckat's right to an appropriate discharge.

The order of the District Court is

Affirmed.

---

2. The Government also contends that because Peckat's *prima facie* case was "weak," the evidence presented by the Army in establishing insincerity need not be as strong as otherwise might be required. But we are not concerned here with the sufficiency of the evidence used to support a finding of insincerity; rather we are seeking some *reasons* for the conclusion. The reasons remain unavowed. Whether Peckat presented a strong or a weak case, his application could not be dismissed without explaining why he was thought to be insincere.

3. The appellant in its opposition to the motion to dismiss has submitted documents showing that the Department of the Army specifically ordered that the serviceman not be discharged. The Government has offered affidavits stating that the discharge was the result of an error at Fort Meade by the clerk processing the separation pending appeal who was relatively new on the job and somewhat confused by the separation orders.