**Richard E. KEISTER, Jr., Private (E–2), Appellant,**

**v.**

**The Honorable Stanley RESOR, Secretary of the Army, et al.**

**No. 71–1936.**

United States Court of Appeals, Third Circuit.

Argued March 13, 1972.

Decided May 15, 1972.

Harvey L. Anderson, Arinson & Anderson, Philadelphia, Pa., for appellant.

Barry W. Kerchner, Asst. U. S. Atty., Louis C. Bechtle, Philadelphia, Pa., for appellees.

Before MAX ROSENN and JAMES ROSEN, Circuit Judges, and TEITELBAUM, District Judge.

## OPINION OF THE COURT

TEITELBAUM, District Judge.

In this appeal, the appellant, Richard E. Keister, Jr., seeks to have set aside a district court order refusing his petition for a writ of habeas corpus. By his petition Keister sought to foreclose the United States Army from activating him to military duty. His activation was stayed pending our disposition of this appeal.

Keister, a reservist in the United States Army Reserve, absented himself in August of 1970 from the final six days of the required fifteen days of Annual Active Duty for Training (ANACDUTRA) without leave or authorization. He was, because of that, certified, on September 7, 1970, an unsatisfactory participating reservist, and advised that he was being recommended for activation. He was further advised that he had five days in which to file an appeal with the Army's Delay Appeal Board to delay his entry on active duty. Thereafter, after some harmless procedural errors by both sides, the appellant filed not only on appeal with the Delay Appeal Board but also a request for a discharge on the basis that he was psychiatrically unfit for military service.

On March 12, 1971, the Appeal Board denied Keister's appeal of his involuntary call to active duty. With respect to his request for a discharge, the Army has officially deferred its determination until after his activation.

As in the district court, the appellant has arrayed in this appeal a welter of attacks, both constructional and constitutional, against the Army's procedures. All of the attacks were soundly handled by the district court, and we think that only a few therefore require comment.

Keister's two principal contentions were, and are, (1) that he is entitled by the Army regulations themselves to have his request for discharge passed on before he is activated and (2) that he is entitled before he is activated to what amounts to a full-blown hearing on the matter of whether or not his absence was excusable. The district court found that he was entitled to neither. We agree.

With respect to his request for a discharge, the appellant maintains that the Army has not complied with its own procedures. He contends that,

". . . when a reservist who has been called to involuntary active duty as an unsatisfactory participating reservist makes application for discharge, the Army is required to process and take final action on the discharge request prior to calling him to involuntary duty, and if he is determined to be eligible for discharge, he must be discharged."

He contends that is the procedure required by Department of Defense Directive 1215.13.

The subject of Directive 1215.13 is "Unsatisfactory Performance of Ready Reserve Obligation." It is for the express purpose of providing the military services, including the Army, with,

". . . Department of Defense *policies* concerning the actions to be taken in regard to members of the Ready Reserve whose performance of duty or participation in reserve training is de-

termined to be unsatisfactory." [Emphasis supplied.]

Paragraph IV B [1] thereof provides simply that an unsatisfactory participant in a Ready Reserve unit will be ordered to active duty as authorized by 10 U.S.C. § 673a and Executive Order 11366. Paragraph IV B expresses policy only, *viz.*, that members of the Ready Reserve who fail to participate satisfactorily in the reserves will be ordered to active duty.

The exceptions to that policy found in Paragraph IV C [2] form the center of appellant's contention. Paragraph IV C provides that a reservist who does not satisfactorily participate in the reserves for any of a few enumerated reasons will be processed, upon application, for discharge. It provides further that, of course, only those eligible for discharge for any of the enumerated reasons will be discharged. The appellant reads this exception as mandating the determination of a reservist's eligibility for discharge before his activation.

We think his reading not only reads into the exception what is not there, but also misconstrues the context of the exception. He interprets it as an exception from being *called* to active duty. But it is not that at all. It is an exception from *service* on active duty. Neither Paragraph IV B nor IV C contains language which in any way purports to structure the timing of determining a reservist's eligibility for discharge. In terms of from what is particularly excepted, IV C appears to be most reasonably related to subparagraph 2 of IV B which subparagraph provides that a reservist ordered to active duty under these provisions,

". . . may be required to serve on active duty until his total service on active duty or active duty for training equals twenty four (24) months."

In sum, it is the actual serving of active duty rather than the procedures of calling to active duty which is the primary import and concern of Paragraph IV B. It follows, then, that the exceptions of IV C apply to service on, rather than to

---

1. "IV.B. *Compliance Measures for Unsatisfactory Participation.*

 1. Members of the Ready Reserve who (a) fail, or are unable, to participate satisfactorily in units of the Ready Reserve, (b) have not fulfilled their statutory reserve obligation, and (c) have not served on active duty or active duty for training for a total of twenty-four (24) months will be ordered to active duty under the provisions of 10 U.S.C. § 673a and Executive Order 11366 (references (b) and (k)).

 2. A member of the Ready Reserve ordered to active duty under these provisions may be required to serve on active duty until his total service on active duty or active duty for training equals twenty-four (24) months.

 3. Where the enlistment or period of military service of a member of the Ready Reserve ordered to active duty under the provisions of 10 U.S.C. § 673a and Executive Order 11366 expires before he has served the prescribed period of active duty, the enlistment or period of military service may be extended until his obligated active duty service has been completed.

 4. If delivery of orders to active duty cannot be accomplished by registered mail with return receipt, they should be hand-delivered by military personnel. If the individual refuses to accept the orders and sign the receipt, he should be informed of the contents of the orders. If, on the appointed date, the individual does not report to the command to which he has been ordered, he will then become an 'unauthorized absentee' and the normal procedures for handling unauthorized absences should be followed."

2. "IV.C. *Exceptions.* As exceptions to the policies in IV.B., above, individuals who do not, or are unable to, participate satisfactorily in units of the Selected Reserve for any of the following reasons will be processed as indicated :

 1. Except as provided in paragraphs C.3 and 4., below, individuals eligible for discharge from the reserve components for dependency, hardship or other cogent reasons authorized by regulations of the Military Department concerned will, upon application, be discharged."

 Paragraphs C3 and 4 are inapplicable.

474

the procedures of being called to, active duty. We conclude that neither the language nor the context of the "exception" found in IV C supports the appellant's contention.

 Moreover, even if the provisions of Directive 1215.13 are ambiguous, the Army's construction is at least as reasonable as any other conceivable construction. We are commanded generally to avoid intrusion on military matters manifestly within the scope of military jurisdiction. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); Reaves v. Ainsworth, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911); O'Mara v. Zebrowski, 447 F.2d 1085 (3rd Cir.1971); ᴠ Antonuk v. United States, 445 F.2d 592 (6th Cir.1971); Morbeto v. United States, 293 F.Supp. 313 (D.C.C.D.Cal.1968). To interpret and implement Directive 1215.13 as appellant suggests, if it is ambiguous, we think would be to unjustifiably trammel the Army's discretion.

 With respect to his contention that he is entitled to a hearing before his activation on the matter of whether or not his absence was excusable, appellant proceeds on two fronts. First, he argues that he is constitutionally entitled to a hearing "with the right to counsel, cross-examination, right to present witnesses and evidence and the other procedural rights." He invokes the fifth amendment right to due process. In Reaves v. Ainsworth, *supra*, it was stated that,

"[T]o those in the military . . . the military law is due process."

At least with respect to the military's internal procedures regarding civil matters that pronouncement is as vibrant today as it was in 1911. O'Mara v. Zebrowski, *supra*, Raderman v. Kaine, 411 F.2d 1102 (2nd Cir.1969). More specifically, it has been expressly held that no constitutional infirmity arises from the absence of a hearing before the involuntary activation of a reservist. O'Mara v. Zebrowski, *supra*; Ansted v. Resor, 437 F.2d 1020 (7th Cir.1971); and

Hickey v. Secretary of Army, 320 F. Supp. 1241 (C.C.D.Mass.1971).

Second, he maintains that the applicable Army regulations themselves require a hearing. He argues, specifically, that one is required by virtue of Army Regulation No. 15–6. He argues that a hearing is required either at the time a reservist's unit commander makes his determination to recommend activation or, alternatively, at the time of the Appeal Board's consideration of a reservist's appeal. The heart of his contention is that he is entitled by AR 15–6 to a hearing before his unit commander.

AR 15–6 is captioned "Procedure For Investigating Officers And Boards Of Officers Conducting Investigations." It provides that it is "supplemental" to regulations which specifically pertain to matters requiring investigation, and that in the event of conflict, the pertinent specific regulation will "govern." The particular Army Regulation which appellant seeks to supplement with AR 15–6 is No. 135–91. That regulation pertains to "Policies and Procedures Governing Satisfactory Participation."

The principal difficulty with appellant's position is that AR 135–91 expressly establishes procedures regarding the activation of unsatisfactory participating reservists. Paragraph 11b(2) thereof prescribes that, in the event of an unexcused absence from ANACDUTRA,

"[I]f the member departed prior to the scheduled termination date of the training, the commander will determine if the member was aware of the training termination date and whether or not emergency or cogent reasons existed for his early departure."

Paragraph 20 thereof provides the machinery for the appeal of the commander's determination.

 Concededly AR 15–6 structures the full-blown hearing to which the appellant contends he is entitled. But in contrast with the simplicity of the determination required by AR 135–91 it clearly cannot be considered to be supplemental to 135–91. The reason for the

simplicity of AR 135–91 is apparent. The activation of an unsatisfactory participating reservist is not punitive; it is administrative. O'Mara v. Zebrowski, *supra*; Fox v. Brown, 402 F.2d 837 (2nd Cir. 1968). In *O'Mara,* it was stated that,

> ". . . the primary purpose of involuntary activation appears to be to maintain the military proficiency that is otherwise maintained by attendance at unit training assemblies."

All that is required by AR 135–91 is that a unit commander making a determination of whether or not a reservist who departs early from ANACDUTRA should be activated is that it be determined that the reservist was aware of the "training termination date" and "whether or not emergency or cogent reasons existed for his early departure." Appellant does not contend that no inquiry was made by his unit commander.[3] His contention is that the inquiry, and the determination required, should be made in the form of a full-blown hearing.

In *O'Mara* it was observed that 135–91 "could be improved." It was observed further that,

> "[D]eterminations of a rather summary character are, however, an every day occurrence in the military."

Still further it was noted that it was not the function of federal courts to "decide what is best for enlisted reservists." In this light, to encumber the determination required of a reservist's commander, obviously contemplated by AR 135–91 to be a reasonably routine one, with the provisions of AR 15–6 would be not only to broaden the latter's scope beyond its indicated parameters, but also to so complicate the activation process as to render it a useless vehicle for the maintenance of military proficiency. In conclusion, then, we think that AR 15–6 cannot be construed to "supplement" AR 135–91, and that the appellant is therefore not entitled to a full-blown hearing from his unit commander before his activation. Consequently, the need for a hearing before the Delay Appeal Board having been correctly decided by the district court, and his unit commander having complied with AR 135–91, the appellant's second contention is, on all fronts, meritless.

The order of the district court will be affirmed in all respects.

---

3. At oral argument it was admitted by appellant that his unit commander was advised by him of the reasons for his early departure.