461 F.2d 621
 Donald D. TAYLOR, Appellant,
v.
Major Harvey I. CHAFITZ, Commanding Officer, 450th Finance
Disbursing Section, Kirkwood USAR Center,
Wilmington, Delaware, and The Honorable
Robert Froehlke, Secretary of the Army.
 No. 72-1058.
 United States Court of Appeals,
Third Circuit.
 Argued April 18, 1972.
Decided May 24, 1972.
 
 Harvey L. Anderson, Stephen Arinson, Philadelphia, Pa., for appellant.
 Norman Levine, Asst. U. S. Atty., Wilmington, Del., for appellees.
 Before ADAMS, MAX ROSENN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 MAX ROSENN, Circuit Judge.
 
 
 1
 This is an appeal from an order of the District Court for the District of Delaware, denying an application for a writ of habeas corpus and a mandatory injunction. Appellant is a member of the United States Army Reserve. He sought in his application relief from certain Reserve duties and discharge from service. The district court dealt with appellant's contentions in an exhaustive written opinion. We conclude, for substantially the same reasons as did the district court, that appellant is entitled to neither a writ of habeas corpus nor an injunction.
 
 
 2
 On June 8, 1971, appellant filed an application for discharge from the Reserves. This application, which forms the foundation for this appeal, was made in the form of a letter to appellant's commanding officer, Major Chafitz. Besides containing a request for discharge, the letter contained a request to be excused from mandatory summer camp obligations scheduled, at that time, to be performed in July of 1971. Accompanying the letter in which these dual requests were made, was a letter from appellant's doctor and a signed statement from appellant. Both documents were in reference to the state of appellant's health. Additionally, there was a letter, signed by appellant, and directed to the Commanding General of the First Army, expressly requesting that appellant be given a medical examination in order to determine whether appellant was fit for retention in the Reserves. In this connection, appellant also requested that a medical board be convened to evaluate his condition, that he be allowed to present testimony and other evidence and be represented by counsel.
 
 
 3
 The request for discharge, and the papers relevant to it, were forwarded by Major Chafitz to higher authorities. On September 30, together with the results of physical examinations of appellant conducted by Army medical personnel in the fall of 1970,[1] the request, and appellant's submissions relevant to it, were reviewed by the Office of the Surgeon, First Army.
 
 
 4
 The district court carefully reviewed the new materials submitted by appellant in reference to his June 8th application for discharge and the records of appellant's physical examinations made in the fall of 1970 by the Army. It found as fact that the new materials did "not indicate any substantial change" in appellant's symptoms or condition since the fall of 1970. (emphasis supplied). We have also reviewed this material, and agree that the record fully supports the findings of fact reached by the district court.[2]
 
 
 5
 On October 8, 1971, higher command informed Major Chafitz that appellant was "medically qualified for USAR retention." No further statement of the reasons appellant was medically qualified accompanied this finding. The documents, accompanying the June 8th request for discharge were stamped "reviewed" by the Office of the Surgeon, First Army Headquarters. Additionally, they were stamped by that office "medically qualified" for USAR retention.
 
 
 6
 On November 26, 1971, appellant was informed that his request to be excused from summer camp had been disapproved. On December 2, 1971, appellant received an order to report for make-up training to replace his loss of summer camp training for the summer of 1971.[3] On December 4, 1971, appellant filed a written request to be excused from the make-up training. Attached to his request were additional materials concerning his health. Major Chafitz refused to excuse appellant from the make-up training.
 
 
 7
 Appellant appealed to higher authorities, but was denied relief. However, Major Chafitz treated appellant's December 4, 1971, request to be discharged from make-up training as also a renewed request to be discharged from the Reserves on medical grounds. This renewed request for discharge is currently being reviewed by higher military authorities, and is not before this court on review. Appellant filed his petition on December 9, 1971. The district court granted a temporary restraining order initially which was dissolved[4] on January 12, 1972, and it dismissed each of appellant's claims for relief. This appeal followed. We affirm.
 
 
 8
 Army Regulation (AR) 40-501, Chapter 3 sets standards which the Army is to apply on questions of medical discharge. The first issue raised on appeal is whether the Army was required to conduct a medical examination of the appellant, as requested by him on June 8, 1971, to ascertain whether he met those standards. Appellant argues that AR 140-120 makes "mandatory, upon military authorities, the requirement that they medically examine a reservist who has applied for a discharge." The operative section of AR 140-120 states:
 
 
 9
 Maintenance of medical fitness, including correction of remediable defects, is largely a responsibility of the reservist. It is of paramount importance that every reservist fulfill his personal obligation to maintain a state of good physical condition. Whenever there is reason to believe that his physical well-being is in question, it is incumbent on every reservist to seek timely medical advice. The medical examinations described in this regulation can be of material assistance by providing a means of detecting conditions requiring attention. (emphasis supplied)
 
 
 10
 It is clear from even a cursory reading of the language quoted above that it contains no language requiring the Army to medically examine a reservist who has applied for discharge. The only positive command in the regulation makes mandatory that the reservist seek a medical examination. The regulation, however, is silent about any duty on the Army's part to give a medical examination when requested.
 
 
 11
 Nor may such a construction be judicially imposed on the regulation since "[t]he army's construction is at least as reasonable as any other conceivable construction." Keister v. Resor, 462 F.2d 471 (3d Cir. 1972). Moreover, to hold that the Army must give a medical examination whenever requested could subject it to impossible administrative burdens; reservists could perpetually seek repeated medical examinations, effectively halting the Army's ability to order them to duty.
 
 
 12
 We hold that AR 140-120 does not mandate that the Army, in all cases, grant a medical examination. There may, however, be some cases, in which the Army is required to give a medical examination upon application. We need not decide that issue here. The facts of this case clearly do not call for a medical examination under any reasonable interpretation of AR 140-120. Here, appellant submitted documentation, with his June 8th application, which the district court found did not indicate a substantial change in his medical condition since his prior medical examinations performed by the Army in the fall of 1970. Thus, appellant himself submitted material which indicated another medical examination was not needed; appellant's submitted materials confirmed an earlier diagnosis by the Army doctors. In these circumstances, we hold that the Army was not required to give appellant the medical examination he requested.[5]
 
 
 13
 Appellant's second contention is that when the Army denied his June 8th request for discharge it was required to state its reasons for retaining him. As noted above, the Surgeon General merely stated that appellant was medically fit for retention. Appellant contends that AR 15-6-which deals with "Procedure for Investigating Officers and Board of Officers Conducting Investigations"-supplements AR 140-120. AR 15-6 requires an officer to state reasons for a decision.
 
 
 14
 This issue has recently been dealt with in the context of AR 15-6's application to another Army regulation, AR 135-91, the regulation dealing with calling to active duty unsatisfactorily participating reservists. Keister v. Resor, supra. The arguments developed in Keister, apply equally to the instant case.[6]
 
 
 15
 . . . to encumber the determination required of a reservist's commander, obviously contemplated by AR 135-91 to be a reasonably routine one, with the provisions of AR 15-6 would be not only to broaden the latter's scope beyond its indicated parameters, but also to so complicate the activation process as to render it a useless vehicle for the maintenance of military proficiency.
 
 
 16
 Keister v. Resor, supra. (emphasis supplied)
 
 
 17
 We hold, therefore, that the requirements of AR 15-6 do not apply as a supplement for any requirements laid down in, or omitted from AR 140-120.
 
 
 18
 Appellant has also argued that the requirements of AR 15-6 for a hearing are applicable to AR 140-120. Since we hold that AR 15-6 does not supplement AR 140-120, this argument is without merit.
 
 
 19
 Appellant's third contention is that even if AR 15-6 is not applicable, other courts have held that a statement of reasons is essential on independent grounds. The cases cited by appellant are generally cases concerning Selective Service classifications in which a prima facie case had been laid for a particular classification, but which classification was rejected without an adequate statement of reasons.[7] These cases are inapposite here. Appellant in the instant case belongs to a class distinct from ". . . inducted servicemen. They [reservists] voluntarily subject themselves to the jurisdiction of the Army, and when they enlist, they are apprised of the consequences. . . ." O'Mara v. Zebrowski, 447 F.2d 1085, 1089 (3d Cir. 1971). In the context of the Reserves "[d]eterminations of a rather summary character which substantially affect individuals are, however, an everyday occurrence. . . ." Id., at 1090.
 
 
 20
 Appellant relies heavily on Peckat v. Lutz, 451 F.2d 366 (4th Cir. 1971). That case dealt with the summary refusal of the Army to discharge a serviceman who claimed to be a conscientious objector. The Fourth Circuit, holding in favor of the serviceman, noted among other things: "The rationality of the Army's process in arriving at its conclusions must be made manifest in the decision itself." Id., at 370. But this holding, appropriate in Peckat, is not controlling here. In Peckat the serviceman had ". . . made out a prima facie case for discharge as a conscientious objector." Id., at 368. In the instant case, the documentation submitted by appellant showed, and the district court so held, that there had been "no substantial change" in his condition. In short, the appellant not only did not establish a prima facie case for a medical examination, but the detailed information he supplied tended to establish a prima facie case for the opposite proposition. It tended to show that there was no compelling need to give appellant another medical examination.
 
 
 21
 There is another important factor which distinguishes the instant case. In the fall of 1970, as noted above, appellant had received from the Army a thorough medical examination in connection with a prior application for discharge. This medical examination detailed the reasons that appellant was fit for duty in the Reserves, albeit not capable of full participation in all Reserve activities. In these circumstances, the Army had, in effect, already stated its reasons for retaining the appellant. The summary refusal to give him an additional medical examination was, in effect, a reliance upon the prior detailed report. The reasons which appellant claims should have been stated in the denial of his June 8th request for a medical examination were stated in the prior medical reports which resulted from appellant's prior requests for a medical examination and discharge from the Reserves.
 
 
 22
 Appellant has argued several subordinate points before this court, but these arguments are irrelevant because of the conclusions we reach above.
 
 
 23
 The order of the district court will be affirmed.
 
 
 
 [1]
 These prior physical examinations had been conducted by the Army in connection with a prior request of appellant for discharge from the Reserves for medical reasons. The result of that request had been an order that appellant be retained by the Reserves, but that his activities be limited so that they would not jeopardize his health
 
 
 [2]
 Appellant has argued before this court that the district court found, as a conclusion of law, that Army regulations require a "substantial change in symptoms or condition" in order for a reservist to qualify for processing and subsequent discharge for medical reasons. This argument is based upon a misreading of the district court's opinion. The district court merely found, as a finding of fact, that the detailed materials submitted by appellant on June 8, 1971, did not indicate any substantial change in his physical condition. The district court did not hold that such a change was required, either for processing or for discharge on medical reasons
 
 
 [3]
 Appellant had been excused from performing his summer camp obligation, for the summer of 1971, by Major Chafitz; but Major Chafitz, at that time, informed appellant that if he was subsequently found fit for retention in the Reserves, he would be expected to do make-up training duty to replace the loss of his summer camp service for the summer of 1971
 
 
 [4]
 The district court stayed dissolution of the restraining order pending application by appellant to the circuit court of appeals for stay pending appeal. The circuit court of appeals granted the application for stay on February 14, 1972
 
 
 [5]
 Had appellant's documentation disclosed a substantial change in his condition, the issue presented would be different. We do not decide whether AR 140-120 requires a medical examination be given by Army doctors when a reservist submits materials which show a substantial change in condition. We hold only that such an examination is not required by AR 140-120 when a reservist, who has recently had an Army medical examination, submits materials which show no substantial change in his physical condition. Likewise, we reach no conclusion as to the duty of the Army to provide a medical examination where a reservist submits no documentation
 
 
 [6]
 In Keister the specific requirement of AR 15-6 with which this court was concerned was the requirement of a hearing. In the instant case, we are concerned with AR 15-6's requirement for a statement of reasons for a particular decision. This, however, does not weaken the applicability of Keister to the instant case. In both cases, the critical feature which makes AR 15-6 inapplicable is that the Army regulation attempted to be supplemented by AR 15-6 is administrative and routine, not punitive
 
 
 [7]
 See, e. g., United States ex rel. Bent v. Laird, 453 F.2d 625 (3d Cir. 1971); Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970)