John R. SHADLE, Jr., Plaintiff,

v.

UNITED STATES of America, Melvin Laird, Secretary of Defense of the United States of America, Lt. Gen. Jonathan Seamen, Commanding General, First United States Army, Maj. William K. Tilman, Commanding Officer, U. S. Army Reception Station, Fort Dix, New Jersey, and Frank J. Fekete, First Lieutenant, United States Army, Defendants.

Civ. No. 70–254.

United States District Court,
M. D. Pennsylvania.

July 9, 1970.

Smith B. Gephart, Killian, Gephart & Snyder, Harrisburg, Pa., for plaintiff.

S. John Cottone, U. S. Atty., James Walker, Asst. U. S. Atty., Scranton, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

Before the court is an Army Reservist's complaint seeking an injunction, assailing an involuntary call to active duty pursuant to Executive Order No. 11366, 10 U.S.C. § 673a. Petitioner John R. Shadle, Jr. claims the court has jurisdiction under the Constitution of the United States, Article I, § 8; Federal Rules of Civil Procedure 4(d) and 4(e); and 28 U.S.C.A. §§ 1331, 1391(e).

No constitutional impairment is set forth or claimed, nor has there been a breach of federal law averred. The essence of petitioner's claim is based upon a breach of the Enlistment Contract of the Armed Forces of the United States with which petitioner is seeking injunctive relief in the form of an affirmative act to direct the rescission of the involuntary activation order. The court construes the complaint as one pursuant to 28 U.S.C. § 1361 which reads as follows:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968).

Petitioner enlisted in the United States Army Reserve on August 19, 1968 and was subsequently ordered to report for active duty (basic training) on May 15, 1969. Petitioner completed the prescribed tour of active duty on September 22, 1969 and was thereafter assigned to the HHC 1st Bn 313th Inf. 157th Bde Army Reserve Unit, in Harrisburg, Pennsylvania, on October 1, 1969. Upon assignment to the Harrisburg unit in October, and until January 6, 1970, petitioner satisfactorily pursued his Armed Forces Reserve commitment, missing only the training session of December 7, 1969 which was denoted as a Multiple Unit Training Assembly and charged as two unexcused absences. A member fails to participate satisfactorily when he accrues in any one-year period a total of five (5) unexcused absences or more, as set forth in Army Regulation 135–91 Section 12.

On January 6, 1970 petitioner sought leave to transfer to another Reserve component nearer his home in Selinsgrove, which is situated approximately fifty miles from Harrisburg. The Unit Commander of the 313th Army Reserve Unit assented to a transfer and granted a "60-day letter" pursuant to AR 135–91 Section 6 which provides, in pertinent part:

"A member who changes his residence to a location too distant to continue participation with his assigned unit will, prior to departure, be counseled and provided a Letter of Instructions Concerning Change of Residence (app A) (Copy attached hereto). He will be allowed a period of 60 days of excused absence from training in which to locate and join another Reserve component unit. The responsibility for locating a suitable vacancy will rest with the individual concerned. The 60-day period will commence on the date following his date of departure. Should the member fail to join a unit within the 60-day period, he will be ordered to active duty for a period of 24 months less any previous period of active duty * * * he may have already served * * *."

The "60-day letter" was issued to the petitioner as per his request and dated January 6, 1970.

There are two Reserve components within a reasonable proximity of petitioner's home, one in Lewisburg and the other in Sunbury, Pennsylvania. Petitioner, in the early part of February, contacted initially the Lewisburg Unit which was his preference but found there were no openings. He thereafter, in the middle to latter part of February, contacted the Sunbury Unit, a component of the Pennsylvania Army National Guard, Troop F, 104th Armored Cavalry, and was informed that openings existed in that unit.

Petitioner's papers were not in order and Sergeant McCale, the duty officer of the Sunbury Unit, suggested that he return again after his papers could be forwarded from the Harrisburg Unit. Sergeant McCale informed petitioner that the "60-day letter" was about to expire and informed him an extension would be necessary, until March 14th, 1970, at which time petitioner would necessarily attend the Guard's drill period and take the oath of enlistment. In addition, the Sergeant informed petitioner that upon taking the oath of enlistment conducted by the commanding officer he would become a member of the Guard and thus severed from his former unit. In the interim period petitioner's "60-day letter" was extended to March 14th.

Petitioner again met with Sergeant McCale on March 11th at which time numerous incomplete papers were signed consisting of the Enlistment Contract, Statement of Enlistment in the National Guard, Armed Forces Security Questionnaire, Declaration of Benefits Received and Waivers, and others. Again petitioner was informed of his duty to report to the weekend drill session beginning on March 14th for purposes of completion of his Enlistment Contract. The Enlistment Contract, though signed by petitioner, by its terms necessitated the taking of the oath, the confirmation of the officer conducting the oath, and an attestation by said officer that the enlistee

has complied with all of the regulations pursuant thereto.

Petitioner and two friends, one of whom was in the same status as petitioner; i. e., awaiting to take the oath of enlistment the following day, and the other a previously enlisted member of Troop F, together on March 13, 1970, ate clams and drank beer, and on March 14th all three were reported to the clerk of Troop F as being ill from food poisoning and unable to attend the drill session.

Petitioner and his friends were informed by telephone that a doctor's excuse would be necessary in order to be excused. (Petitioner claims he placed a call to a physician on the 14th before calling the unit; described his illness, and was told to rest. That he was also informed by the physician that he would sign an excuse on Monday night since he did not have office hours on Saturday). On March 15th the second day of drill session, the duty officer called the homes of the petitioner and his friends finding that they were not at home and that their parents were unaware of the whereabouts of the three.

Petitioner did not appear for drill either on the 14th or 15th of March.

On the 16th Captain Erdle of Troop F informed Captain Bankert, the Unit Commander of the Harrisburg Unit, that petitioner was unacceptable and not accepted within the "60-day letter."

Petitioner's doctor's excuse was received March 18th, 1970 at Troop F Headquarters.

Pursuant to AR 135.91 Section 6h, Captain Bankert forwarded petitioner's personnel records jacket to the Department of the Army, Headquarters, First United States Army, Fort George G. Meade, Maryland, and in addition notified the petitioner by letter of March 20, 1970, 1 AA Form 841, that a request for activation orders had been initiated. The form letter advised petitioner that "Any request for delay or relief from active duty orders must be submitted within five (5) days after receipt of this notification. Except for reasons of emergency or temporary illness or injury, a delay may not be authorized once your active duty orders have been published." No delay had been sought during the five day period.

On April 30, 1970 petitioner was notified by letter of a pending order to active duty. The letter informed petitioner that he had 15 days within which to appeal. By letter and documentation of May 12, 1970, petitioner exercised his right of appeal. The Headquarters disapproved the appeal by letter of May 22, 1970 and noted his activation duty as June 19, 1970. Final determination was made on June 18, 1970 by the Department of the Army, and petitioner was ordered by telegram to report on June 19, 1970.

The facts indicate, and the petitioner was so informed, that upon issuance of the "60-day letter" petitioner was obligated to "locate and join" another component within the 60-day period. An extension of the 60-day period was effectuated in order that petitioner could be afforded the opportunity to take the new oath of enlistment as required by the National Guard components to perfect his enlistment. Petitioner had been aware of the necessity of taking the oath in order to enlist in the National Guard.

Petitioner was also aware that it was the individual Reservist's responsibility to "locate and join" a new unit. Even if petitioner had been ill on Saturday March 14th and on Sunday Morning March 15th, he could have fulfilled his obligation to attend the Sunday drill session while absent from his home.

Captain Erdley did not act outside the scope of his authority nor abuse his discretion by refusing "acceptance" of the petitioner. AR 135–91 Section 8f; AR 135–91 Section 4d(2).

It is therefore adjudged that defendants' motion to dismiss will be granted. The findings of fact and conclusions of law are deemed to be incorporated herein.