## Raymond A. LIZZIO

### v.

**Elliot RICHARDSON, Secretary of Defense and Commanding Officer, U. S. Army Reception Station, Fort Dix, New Jersey, et al.**

#### Civ. A. No. 73-945.

United States District Court,
E. D. Pennsylvania.

April 15, 1974.

Michael F. Kraemer, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Robert N. DeLuca, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Raymond A. Lizzio, a member of the United States Army Reserves, commenced the instant action to obtain declaratory and injunctive relief from an order of the Department of the Army directing him to perform 19 months and 15 days of active duty in the United States Army. Jurisdiction has been invoked pursuant to 28 U.S.C. §§ 1331, 1361 and 2201. The matter is presently before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction and for plaintiff's failure to exhaust his administrative remedies.

Section 673a of 10 U.S.C.[1] provides in relevant part that the President may order to active duty any member of a Ready Reserve unit who is not participating satisfactorily in a reserve unit. The authority of the President to activate reservists who have not satisfactorily performed their military obligations was delegated to the secretaries of the military departments by Executive Order No. 11366. Army Regulation 135–91(12), promulgated by the Secretary of the Army pursuant to authority conferred upon him by Executive Order No. 11366, provides that five unexcused absences from the reserve unit training assemblies ("drill") accumulated during a one-year period constitutes failure to participate satisfactorily in the Army Reserves. According to Army Regulation 135–91(e)(2), the commander of the reserve unit must first determine whether "any cogent or emergency reason existed which prevented the member from attending" the required drills or other reserve assemblies. If no cogent or emergency reason is found to exist, the unit commander then forwards to the appropriate Army headquarters a request that the reservist be ordered to active duty.

Specialist Fourth Class (Sp. 4) Lizzio incurred eight unexcused absences from scheduled drills during February and March of 1972. On March 17, 1972, plaintiff's dermatologist contacted the commanding officer of the reserve unit and advised him that plaintiff was under medical care for cystic acne vulgaris, a skin disorder of the face, back and chest. The dermatologist recommended that Lizzio be discharged from the reserves. Following the incurrence of the unexcused absences and the receipt of the doctor's letter, a meeting was held at the reserve center for the purpose of advising plaintiff of his obligation to attend the required reserve assemblies. Sp. 4 Lizzio was further advised that an Army medical examination would be scheduled at Ft. Dix, New Jersey, to determine whether he should be retained in the United States Army Reserves or processed for medical discharge. On May 9, 1972, plaintiff was medically examined at the Medical Processing Section at Ft. Dix, New Jersey, and found qualified for retention in the reserves by the examining physician.

Plaintiff was notified over the telephone by the detachment commander on May 18 that he was qualified for reserve duty and that he should report two days later on May 20 to begin 15 days annual training with his reserve unit. The following day, the commander sent a telegram to Lizzio to confirm their telephone conversation of the previous day. This telegram again directed plaintiff to report on May 20 for the annual 15-day encampment.

Plaintiff failed to attend the required annual training with his reserve unit. The purported justification for the unauthorized absence from the encampment was contained in the following telegram sent to the unit commander by Lizzio on May 20:

"Will not attend summer camp per my doctor's instructions as proper medical evaluation was not given. Additional documentation will follow."

Upon the return of the reserve unit from annual training, a dermatology consultation and physical was scheduled for plaintiff at Valley Forge Military Hospital. This examination also found Lizzio to be qualified for reserve duty. On August 30, 1972, the Surgeon General, First United States Army, Ft. Meade, Maryland, affirmatively reviewed the medical findings of the examination held at Valley Forge Military Hospital.

After an initial determination that no "cogent or emergency reasons" existed

---

1. § 673a(a) reads as follows: "(a) Notwithstanding any other provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who—(1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve; (2) has not fulfilled his statutory reserve obligation; and (3) has not served on active duty for a total of 24 months.

for the plaintiff's nonattendance at summer camp, Colonel Joseph P. Kirlin, Jr., Commanding Officer of the Reserve Unit, requested that Lizzio be involuntarily ordered to active duty as an unsatisfactory participant pursuant to Army Regulation 135–91 for failure to attend the 15-day annual training camp. Plaintiff was promptly informed of the commanding officer's request for active duty orders. By letter dated December 29, 1972, Army Headquarters, First United States Army, Ft. Meade, Maryland, notified Lizzio of the active duty orders.

Plaintiff appealed his orders to active duty through the properly designated military channels. The appeal was denied and orders were published by the First Army requiring the plaintiff to report to the United States Army Reception Station, Ft. Dix, New Jersey, on May 15, 1973, for 19 months and 15 days of active duty.

Sp. 4 Lizzio now seeks declaratory and injunctive relief from the active duty orders on alternative grounds. Plaintiff contends that he is medically unqualified for service in the active Army or the Army Reserves. In addition, plaintiff claims that he was denied a meaningful appeal of the previously described active duty orders.

In support of the motion to dismiss the complaint on the basis that plaintiff failed to exhaust his available administrative remedies, defendants cite Army Regulation 135–91, ¶ (15)(a) which states, in pertinent part: "Each member ordered to active duty will be required to undergo a medical examination . . ." Defendants submit that before this Court must determine whether plaintiff received a meaningful appeal he (Lizzio) should report to active duty and undergo a complete physical examination required by the above regulation. It is further argued by the defendants that the active duty examination will provide an opportunity for the Army, as an administrative agency, to amend or modify the involuntary activation order, if the results of such an examination revealed that plaintiff is in fact medically unfit for further military service.

The defendants' position finds strong support in the decision of the Third Circuit in Karpinski v. Resor, 419 F.2d 531 (3rd Cir. 1969). Karpinski, a member of the United States Army Reserves, was called to active duty due to an excessive number of absences from mandatory drills. The reservist challenged the action of the military on the ground, *inter alia*, that he was medically unfit for active duty. The lower court denied plaintiff's request for declaratory and injunctive relief for failure to exhaust administrative remedies in refusing to report to the reception center where he would have been given a physical examination and his eligibility for active duty determined. The Court of Appeals affirmed on the basis that the reservist would be given a physical examination upon reporting for active duty.

The decision and reasoning of the Court in Karpinski v. Resor, *supra*, is certainly applicable to the case at bar. Sp. 4 Lizzio is challenging the involuntary activation orders on the ground that his skin condition renders him medically unqualified for further military duty. At the same time he has declined to present himself at the induction center as directed by the active duty orders, where plaintiff would be afforded a complete and thorough medical examination pursuant to Army Regulation 135–91, ¶ (15)(a). The record is devoid of any indication that the plaintiff will receive less than a full and fair physical examination for the purpose of determining whether further military duty would be detrimental to his health and welfare.

The Court believes that it would be inappropriate to decide the issue of the propriety of the involuntary activation orders and the adequacy of plaintiff's appeal before the plaintiff is afforded the required preinduction physical examination. Such an examination will inure to the benefit of both Sp. 4 Lizzio and the Army in that the medical suitability of the reservist for active duty will be

resolved on a more definite and conclusive basis.

\* \* \* \* \* \*

### ORDER

And now, to wit, this 15th day of April, 1974, upon consideration of the motion of defendants to dismiss the complaint because of plaintiff's failure to exhaust available administrative remedies, it is ordered that said motion is granted.