Kline James **WOLF**, Jr.,
Plaintiff,

v.

**SECRETARY OF DEFENSE,**
Defendant.

Civ. No. 75–510.

United States District Court,
M. D. Pennsylvania.

Aug. 1, 1975.

Lee H. Roberts, Lock Haven, Pa., for plaintiff.

S. John Cottone, U. S. Atty., Laurence M. Kelly, Asst. U. S. Atty., Scranton, Pa., for defendant.

SHERIDAN, Chief Judge.

■ Plaintiff, Kline James Wolf, Jr., a Private in the Army National Guard of the State of Pennsylvania, has filed this action seeking injunctive relief from an order of the Department of the Army directing him to report for active duty in the United States Army. While plaintiff has set forth the wrong jurisdictional sections in his complaint, this court has jurisdiction pursuant to 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1361. A hearing was held on July 15, 1975, at which the following facts emerged.

Plaintiff enlisted in the Army National Guard on April 29, 1969. He has been ordered to active duty for accumulating in a one-year period five or more unexcused absences from drill ("unit training assemblies"). The first four unexcused absences, which resulted from plaintiff's failure to attend a MUTA 4 ("multiple unit training assembly," see AR 135–91, paragraph 12b) on August 18 and 19, 1973, are not in dispute. The controversy centers on the accumulation of plaintiff's fifth unexcused absence from drill. The plaintiff missed a MUTA 4 on April 27 and 28, 1974. Plaintiff requested permission to miss the four drills scheduled for April 27 and 28 and to make up the absences through "equivalent training" (ET). See AR 135–91, paragraphs 9 and 10. This request was denied. Nevertheless, plaintiff did not attend the scheduled drills on April 27 and 28 due to the fact he felt compelled to go to Ohio to see his girl friend who had just advised him that she was pregnant. By letter dated April 29, 1974, plaintiff was advised that he had been credited with an additional four unexcused absences for his failure to appear at the MUTA 4 conducted by his unit on April 27 and 28, thereby bringing his total unexcused absences to eight. The letter also stated that if he had any question regarding his unexcused absences, he should report to his unit commander and that the next scheduled drills were on May 18 and 19, 1974. Plaintiff testified that prior to the meetings of May 18 and 19, 1974, he contacted Warrant Officer Weaver, not his unit commander, concerning his status in the National Guard unit, that Weaver informed him that he was suspended from the unit, and that since he was being placed on active duty, it was no longer necessary for him to attend drills. Plaintiff testified that in reliance on these statements by Warrant Officer Weaver, he did not attend the MUTA 4 scheduled for May 18 and 19. Subsequently, he received a letter stating that he had accumulated another four unexcused absences for failure to attend the May 18 and 19 drills, bringing his total unexcused absences to twelve.

There is a factual dispute as to whether Warrant Officer Weaver told plaintiff not to attend the MUTA 4 held on May 18 and 19. AR 135–91, paragraph 9, makes clear that only the unit commander, in this case Captain Whitman, can authorize excused absences and hence plaintiff knew or should have known that Warrant Officer Weaver could not authoritatively answer his question about the May 18 and 19 drills. Moreover, the letter dated April 29, 1974, which informed plaintiff of his accumulation of eight unexcused absences and that the next scheduled drills were on May 18 and 19, stated that he should report to Captain Whitman personally if he had any questions regarding his unexcused absences. However, the court need not resolve this factual dispute surrounding the May 18 and 19 absences since the court has concluded, for the reasons set forth *infra*, that plaintiff's challenge to the four absences accumulated on April 28 and 29, 1974, is without merit and hence—in combination with the previous four absences accumulated on August 18 and 19, 1973, which plaintiff does not challenge—he still has eight unexcused absences, four more than permissible under the regulations, without taking into account the absences on May 18 and 19.

Five unexcused absences from drill accumulated during a one-year period con-

stitutes failure to participate satisfactorily in the Ready Reserve. AR 135–91, paragraph 12. A member of the Ready Reserve who fails to participate satisfactorily in this respect will be ordered to active duty for a period which, when added to his prior service on active duty, will total 24 months. 10 U.S.C.A. § 673a; Executive Order 11366; AR 135–91. Plaintiff signed an enlistment agreement (Government Exhibit No. 2, page 1) which states in part:

"During My Ready Reserve service, both before and after my active duty training, I am required to participate satisfactorily in the scheduled drills (at least 48 each year) and attend field training at least 15 days each year, unless excused therefrom by proper authority . . .

"I further understand that - - -

"If for any reason, other than inactivation, relocation or reorganization of my unit, I fail without proper authority to attend the prescribed number of unit training assemblies, or am unable to continue in a Ready Reserve paid drill unit assignment, I can be involuntarily ordered to active duty for twenty-four months, less any period of active duty or active duty for training I previously performed.

"I also understand my term of enlistment will be extended to permit completion of such active duty. . . ."

■■ Plaintiff argues that the decision to deny him permission to miss the April 27 and 28, 1974, drills and to make up his absences by equivalent training "was an abuse of the commander's discretion." Plaintiff's Brief In Support Of Injunction, p. 3. It is a well established principle that discretionary decisions of military officials made within their valid jurisdiction are beyond the permissible scope of review of the federal courts. *Orloff v. Willoughby,* 1953, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842; *O'Mara v. Zebrowski,* 3 Cir. 1971, 447 F.2d 1085; *White v. Callaway,* 5 Cir. 1974, 501 F.2d 672; *Antonuk v. United States,* 6 Cir. 1971, 445 F.2d 592, 594; *Caruso v. Toothaker,* M.D.Pa.1971, 331 F.Supp. 294. *Cf. Shadle v. United States,* M.D.Pa.1970, 315 F.Supp. 102. As the Supreme Court stated in *Orloff v. Willoughby,* 345 U.S. at 93–94, 73 S. Ct. at 540:

". . . But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. . . ."

Thus, this court cannot undertake a *de novo* review of the decision to deny plaintiff's request for permission to miss the April 27 and 28 drills, and the court is without power to review the decision for reasonableness.

For the same reasons, the court is without power to review in any manner the unit commander's determination pursuant to AR 135–91, paragraph 12e(2), that no "cogent or emergency reasons existed" which prevented plaintiff from attending the April drills. AR 135–91, paragraph 12e(2), requires the unit commander to make the aforementioned determination when the absence(s) charged will result in a total accrual of five or more unexcused absences in a one-year period, thereby resulting in the member's involuntary activation. It should be noted that plaintiff's unit commander, Captain Whitman, clearly made the determination required by AR 135–91, paragraph 12e(2). *See* Government Exhibit No. 2, pp. 10, 17.

■■ Where the military takes action, and that action is governed by applicable regulations, the military must adhere to its own regulations in taking

such action. *White v. Callaway, supra; Caruso v. Toothaker, supra.* Thus, an order can be reviewed by the federal courts to determine whether the military has violated its own regulations or the procedures that those regulations mandate. *O'Mara v. Zebrowski, supra.*

Plaintiff alleges that Warrant Officer Weaver instead of Captain Whitman, his unit commander, made the decision to deny him permission to miss the April 27 and 28 drills contrary to AR 135–91, paragraphs 9 and 10. The record does not support this contention. Rather plaintiff contacted Warrant Officer Weaver and made his request to him for an excused absence, whereupon Weaver communicated that request to Captain Whitman. Captain Whitman made the decision to deny the request and that decision was communicated to plaintiff by Weaver. In short, Weaver was only an intermediary, not the decision-maker. *See* Plaintiff Exhibit Nos. 5 and 6; Government Exhibit No. 2.

 Plaintiff contends that the military failed to comply with the notice requirement of AR 135–91, paragraph 12(2). On July 10, 1974, plaintiff was notified by Captain Whitman, his unit commander, that action was being initiated to order him to active duty because of his accumulation of twelve unexcused absences within a one-year period. The letter also advised plaintiff that he was not authorized nor required to attend any future drills. Concurrently Captain Whitman sent a request to the Adjutant General of the Pennsylvania Army National Guard requesting that plaintiff be ordered to active duty for the prescribed time period. *See* Government Exhibit No. 2, pp. 9–16. This procedure is in full compliance with AR 135–91, paragraph 12(2). Plaintiff's unit commander immediately notified him when he took action to order his involuntary activation. To the extent plaintiff argues that the unit commander must "immediately" request a member's involuntary activation upon the accumulation of a fifth unexcused absence, plaintiff has misinterpreted AR 135–91, paragraph 12(2). There is no requirement that the unit commander immediately request a member's activation; rather the regulation requires only that the unit commander immediately notify the member when he requests that the member be ordered to active duty.

 Finally, plaintiff challenges the constitutionality of AR 135–91 on the ground the procedure set forth which results in the involuntary activation order is violative of due process. This constitutional claim is without merit and the court holds that AR 135–91 provides the minimum procedural safeguards that are constitutionally required by the due process clause of the fifth amendment. To those in the military, the military law is due process. *Reaves v. Ainsworth,* 1911, 219 U.S. 296, 304, 31 S.Ct. 230, 55 L.Ed. 225. For the reasons which differentiate military society from civilian society, those in the military do not enjoy the same rights enjoyed by civilians. *Parker v. Levy,* 1974, 417 U.S. 733, 94 S.Ct. 2547, 41 L. Ed.2d 439; *Raderman v. Kaine,* 2 Cir. 1969, 411 F.2d 1102, petition for cert. dismissed, 1969, 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447. The different character of the military community and of the military mission requires a different application of constitutional guarantees. *Parker v. Levy, supra.* In *O'Mara v. Zebrowski,* 447 F.2d at 1089–1090, the Court of Appeals for the Third Circuit upheld the constitutionality of AR 135–91 and the procedure embodied therein reasoning as follows:

"Persons in the military do not enjoy the full range of rights enjoyed by civilians, and, in addition, voluntary enlisted reservists, like O'Mara, are a class distinct from inducted servicemen. They voluntarily subject themselves to the jurisdiction of the Army, and when they enlist, they are apprised of the consequences of failure to participate satisfactorily in unit training assemblies. This orientation, which must be repeated at least once

annually for each enlisted reservist, includes having each enlisted reservist sign a statement acknowledging that 'he has been oriented on and understands the satisfactory participation requirements and enforcement provisions.' . . .

" . . .

"The procedure of Army Reg. 135–91 unquestionably could be improved. Determinations of a rather summary character which substantially affect individuals are, however, an everyday occurrence in the military. It is not our function to decide what is best for enlisted reservists. The challenged procedure does permit a reservist to take the matter up with his unit commander, and it also permits an appeal in which the reservist has an opportunity to 'explain those facts pertinent to his case which he feels were not fully considered, and * * * include any additional appropriate evidence. * * * ' Army Reg. 135–91(20)(a). Given the factual context in which this procedure operates, and the presumption of constitutionality that attaches to this statutorily authorized procedure, we are unable to conclude that the procedure is constitutionally defective." (Footnotes omitted.)

Any argument that plaintiff's involuntary activation constitutes cruel and unusual punishment in violation of the eighth amendment likewise must be rejected. In the *O'Mara* case, the court of appeals stated that it was erroneous to characterize involuntary activation as punishment because the primary purpose of an involuntary order to active duty is to maintain military proficiency that is otherwise maintained by attendance at unit drills. In view of this characterization of involuntary activation, it is apparent that there is no eighth amendment violation. *Accord: Caruso v. Toothaker*, 331 F.Supp. at 302.

In summary, the court concludes that AR 135–91 is constitutional and that its procedures have been followed by the military in the instant case. Therefore, plaintiff's request for injunctive relief enjoining his involuntary activation will be denied.

The foregoing shall constitute the court's findings of fact and conclusions of law.