Daniel G. SULLIVAN, Plaintiff,

v.

Capt. Earl R. MANN et al., Defendants.

Civ. No. 77–118.

United States District Court,
M. D. Pennsylvania.

April 28, 1977.

As Amended May 4, 1977.

Charles E. Wasilefski, Hurwitz, Klein, Benjamin & Angino, Harrisburg, Pa., for plaintiff.

Harry A. Nagle, Lewisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

Daniel G. Sullivan, a private in the Pennsylvania National Guard, has filed a complaint for injunctive relief and monetary damages pursuant to 28 U.S.C. § 1331 and the due process clause of the Fifth Amendment of the United States Constitution based on the action of the Defendants in ordering him to involuntary active duty in the United States Army for a period of eighteen months. Sullivan initially enlisted in the Massachusetts National Guard on March 15, 1971 and took his basic combat training at Ft. Louis, Washington, from July 9, 1971 through September 12, 1971. He was then ordered to take advanced individual training in infantry at Fort Polk, Louisiana, from September 21, 1971 until

November 15, 1971. After being released from active duty, he served in the Massachusetts National Guard from November 16, 1971 to January 14, 1975. As a result of a change in his civilian job, Sullivan requested and received an honorable discharge from the Massachusetts National Guard, conditioned upon his reenlistment in the Pennsylvania National Guard for the remainder of his six-year commitment. He enrolled in the Pennsylvania National Guard on January 15, 1975.

On March 15, 1971, when Sullivan entered the Massachusetts National Guard, he signed an enlistment contract, ¶ 53 of which reads in part:

"I further understand that as a statutorily obligated member of the ready reserve if I am not assigned to, or participating satisfactorily in, the unit of the ready reserve, and have not served on active duty for a total of 24 months, I may be ordered back to duty without my consent, by order of the President, until my total service equals 24 months, the terms of my enlistment notwithstanding."

10 U.S.C. § 673(a)[1] confers authority on the President to order to active duty any member of the Ready Reserve of the armed forces who is not participating satisfactorily in a unit of the Ready Reserve, has not fulfilled his statutory reserve obligation, and has not served on active duty for a total of 24 months. By Executive Order No. 11366, the President delegated this authority to the Secretary of Defense, together with authority to assign this power in turn to any of the Secretaries of the various armed forces. Criteria for satisfactory participation are set forth in Army Regulation 135–91(12) which provides:

"A member fails to participate satisfactorily when he accrues in any 1-year period a total of five or more unexcused absences from scheduled unit training assemblies. . . ."

In the six-month period between January 25, 1976 and July 24, 1976, according to the records of the Pennsylvania National Guard, Sullivan received twenty-four unexcused absences. (Defendants' Exhibit 1, page 118.) After the twenty-fourth unexcused absence, Harry J. Mier, Jr., Adjutant General of the Pennsylvania National Guard, on August 12, 1976, wrote Sullivan a letter informing him that he was being reported to the Army Area Commander for an involuntary order to active duty under the provisions of AR 135–91.

On February 12, 1977, a hearing was held before the undersigned judge on Sullivan's request for a temporary restraining order to delay his activation into the United States Army. By agreement of the parties, the Court issued a temporary restraining order to enable a decision to be reached on Sullivan's claims prior to his reporting for service in the army.

On March 2, 1977, and within the time limit set by the Court, the Defendants filed a motion to dismiss or in the alternative for summary judgment on the grounds that Sullivan's complaint failed to state jurisdiction over the subject matter, failed to state a claim upon which relief could be granted, and in the event that jurisdiction over such a matter exists and a claim is presented, the Defendants should prevail as a matter of law. A supporting brief was filed on March 7, 1977. On April 18, 1977, the Defendants in a reply brief withdrew their contention that the Court lacks subject matter jurisdiction over Sullivan's complaint. Sullivan's various claims for relief will be dealt with *seriatim.*

■■■ First, Sullivan contends that the procedures of Army Regulation 135–91 violate the due process clause of the Fifth Amendment of the United States Constitution. The requirements of due process vary depending upon the situations involved.

1. § 673. Ready Reserve.

"(a) In time of national emergency declared by the President after January 1, 1953, or when otherwise authorized by law, an authority designated by the Secretary concerned may, without the consent of the persons concerned, order any unit, and any member not assigned to a unit organized to serve as a unit, in the Ready Reserve under the jurisdiction of that Secretary to active duty (other than for training) for not more than 24 consecutive months."

698

Due process is a flexible, not a rigid requirement. For the reasons which differentiate military society from civilian society, those in the military do not enjoy the same rights enjoyed by civilians. *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Raderman v. Kaine,* 411 F.2d 1102 (2d Cir. 1969), pet. for cert. dismissed, 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447 (1969). The unique character of the military community and of the military mission requires an application of constitutional guarantees which differ from those relating to civilians. The allowable scope of review of the discretionary decisions of military officials by the federal courts extends to the questions (1) whether the military orders were promulgated in violation of the military's own regulation, *O'Mara v. Zebrowski,* 447 F.2d 1085 (3d Cir. 1971); *Caruso v. Toothaker,* 331 F.Supp. 294, 296 (M.D.Pa.1971); (2) whether procedures employed by the military comport with the requirements of due process in light of the context in which the procedures operate, *O'Mara v. Zebrowski, supra; Ansted v. Resor,* 437 F.2d 1020, 1023–1024 (7th Cir. 1971); *Crotty v. Kelly,* 443 F.2d 214 (1st Cir. 1971); *Caruso v. Toothaker, supra; Feeny v. Smith,* 371 F.Supp. 319 (D.Utah 1973), and (3) whether or not the military acted within the jurisdiction conferred on it by law. *Winters v. U. S.,* 281 F.Supp. 289 (E.D.N.Y.1968), affirmed, 390 F.2d 879 (2d Cir. 1968); *Caruso v. Toothaker, supra; Feeny v. Smith, supra.*

■ Sullivan concedes that the United States Army has acted within the jurisdiction conferred on it by law but argues that the procedures employed by the military violate due process. AR 135–91 does not require that a hearing be held before the unit commander recommends involuntary activation. The appeal process of AR 135–91 does not provide for a hearing at which the individual being activated can appear. The United States Court of Appeals for the Third Circuit has twice held that the procedures set forth in Army Regulation 135–91 meet the standards of due process. *O'Mara v. Zebrowski,* 447 F.2d 1085 (3d Cir. 1971); *Keister v. Resor,* 462 F.2d 471 (3d Cir. 1972), cert. den., 409 U.S. 894, 93 S.Ct. 116, 34

L.Ed.2d 151 (1972). In addition, the vast majority of the Courts which have dealt with the issue have concluded that Army Regulation 135–91 comports with the requirements of the due process clause of the Fifth Amendment of the United States Constitution. *Hall v. Fry,* 509 F.2d 1105 (10th Cir. 1975); *Raderman v. Kaine,* 411 F.2d 1102 (2d Cir. 1969), pet. for cert. dis., 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447 (1969); *Hoersch v. Froehlke,* 382 F.Supp. 1235 (E.D.Pa.1974); *Wolf v. Secretary of Defense,* 399 F.Supp. 446 (M.D.Pa.1975); *United States v. Greer,* 394 F.Supp. 249 (D.N.J.1975); *Feeny v. Smith,* 371 F.Supp. 319 (D.Utah 1973); *Mellinger v. Laird,* 339 F.Supp. 434 (E.D.Pa.1972); *Russo v. Luba,* 400 F.Supp. 370 (W.D.Pa.1975).

■ Sullivan maintains that because the Vietnam War has terminated, and the United States now has a volunteer army the decisions of the Third Circuit and other courts concerning the reduced scope of due process afforded to members of the military should be re-evaluated. The lesser degree of due process afforded to members of the military is not based upon an ongoing war or the needs of a drafted army. Rather, it develops from the view that the courts are not equipped to determine specific procedures proper to the decision making of the military. The function of the armed forces of the United States of America is to be prepared to defend this country and its national security interests at any time. To perform this role properly and effectively, summary proceedings, such as those provided for by AR 135–91, may be essential. *Reaves v. Ainsworth,* 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911).

In the light of the foregoing, the Court concludes that Army Regulation 135–91 does not violate the due process clause of the Fifth Amendment and will grant the Defendants' motion for dismissal as to this issue.

■ Second, Sullivan argues that Army Regulation 15–6 should be applied to Army Regulation 135–91 and therefore a hearing should have been held before his involun-

tary activation took place. In *Keister v. Resor,* 462 F.2d 471, 474, 475 (3d Cir. 1972), cert. den., 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 151 (1972), the United States Court of Appeals for the Third Circuit concluded that AR 15–6 did not control proceedings for involuntary activation pursuant to AR 135–91. The Court based its conclusion on the fact that AR 15–6 states that it is supplemental to regulations which specifically pertain to matters requiring investigation and that in the event of conflict between regulations, the pertinent specific regulation will govern. AR 135–91 expressly establishes procedures regarding the activation of unsatisfactory participating reservists. Because of the simplicity of the determination required by AR 135–91, AR 15–6 cannot be considered to be supplemental to AR 135–91. According to the Court of Appeals, the reason for the simplicity of AR 135–91 is that the activation of an unsatisfactory participating reservist is not punitive, it is administrative. See *Caruso v. Toothaker,* 331 F.Supp. 294, 301–302 (M.D. Pa.1971). In the light of the foregoing, the Court will grant the Defendants' motion to dismiss Sullivan's claim that the procedures of AR 15–6 apply to an involuntary activation pursuant to AR 135–91.

■ Third, Sullivan argues that being called to active duty for 18 months for missing meetings of his National Guard unit constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Involuntary activation is not punishment because it may befall reservists who are unable by reason of a change in residence to participate with their assigned unit, as well as those who fail to attend training sessions without proper authority. The primary purpose of involuntary activation appears to be to maintain the military proficiency otherwise preserved by attendance at unit training assemblies. *O'Mara v. Zebrowski,* 447 F.2d 1085, 1089 (3d Cir. 1971); *Keister v. Resor,* 462 F.2d 471, 475 (3d Cir. 1972), cert. den. 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 151 (1972); *Caruso v. Toothaker,* 331 F.Supp. 294, 302 (M.D.Pa.1971); *Wolf v. Secretary of Defense,* 399 F.Supp. 446, 451

(M.D.Pa.1975); *Mickey v. Barclay,* 328 F.Supp. 1108, 1114 (E.D.Pa.1971). See *Ingraham v. Wright,* —— U.S. ——, ——, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Consequently, Sullivan's contention that his involuntary activation violates the Eighth Amendment of the United States Constitution is dismissed.

■ Fourth, Sullivan argues that AR 135–91 required his commanding officer, Captain Mann, personally to inform him every time he missed or failed to participate satisfactorily in a National Guard assembly or drill. This is not what the regulation sets forth. Paragraph 12(e) of AR 135–91 states that "In addition to the orientation requirements specified in Paragraph 13, the unit commander will (1) insure that following each scheduled training assembly (UTA or MUTA) from which a member is absent without authority, but prior to the next scheduled training assembly (except as provided in 2 below), the member is contacted in person, if practicable, and furnished with a letter of instruction (prepared locally) outlining his obligation to participate satisfactorily, stating the number of absences he has accrued and explaining the implications of additional unexcused absence from training, (b) if he is unable or it is impracticable to establish personal contact, the member is furnished a letter of instruction by certified mail, delivered to addressee only, return receipt requested . . .." Notice by certified mail was sent to Sullivan each time he missed an assembly without having obtained a proper excuse. Several of the notices were returned and marked unclaimed. (Defendants' Exhibit 1, pages 112 to 115). Sullivan has not contended that the notifications were sent to an incorrect address. In addition, he makes no claim that he ever informed Captain Mann or anyone else at the Pennsylvania National Guard of a change of address. Paragraph 12(e)(1) allows the unit commander to utilize mail notice when personal contact is not practicable. Sullivan does not argue that personal contact was practicable. The determination of whether personal contact was practicable is a discretionary decision

for the unit commander. The Court will not substitute its judgment for that of the unit commander on this point. Sullivan also cannot complain about not knowing that he had missed drills when apparently he refused to accept the notices. *Hoersch v. Froehlke*, 382 F.Supp. 1235 (E.D.Pa.1974). In addition, it is clear that he knew that he had not attended at least four unit assemblies before he failed to appear at summer camp. (Sullivan's letter of August 25, 1976, Defendants' Exhibit 1, page 106.) Absence from the summer encampment alone permitted Sullivan to be activated pursuant to AR 135–91(11). Sullivan was charged with an unexcused absence for each of the fifteen days of the encampment. Thus, notice of prior absences was not required because this one incident resulted in more than five unexcused absences. Consequently, Sullivan's claim that he did not receive proper notice of his delinquencies will be dismissed for failure to state a claim pursuant to 12(b)(6) of the Federal Rules of Civil Procedure.

■ Fifth and finally, Sullivan contends on page 2 of his brief in opposition to Defendants' motion to dismiss that Captain Mann, his unit commander, recommended his involuntary activation without determining if any cogent or emergency reasons existed which prevented him from attending the summer encampment which began on July 10, 1976. AR 135–91, 12(d)(2) states in relevant part that the unit commander will ". . . If the absence(s) charged will result in a total of five or more unexcused absences in a one-year period, determine if any cogent or emergency reasons existed which prevented the member from attending. If no such reasons existed, he will forward the member's military personnel records jacket to the appropriate area commander or state adjutant general requesting that he be ordered to active duty. . . ." This Court has previously held in *Caruso v. Toothaker*, 331 F.Supp. 294, 298–299 (M.D.Pa.1971) that this provision only requires the unit commander to investigate the fifth absence or that absence which caused the recommendation of involuntary activation. In this case, it was not the fifth absence but the failure to attend the summer encampment which resulted in Sullivan's activation. Neither Sullivan nor the Defendants have submitted affidavits concerning this issue. The Defendants have produced letters written by Captain Mann to the Department of Military Affairs which indicate that he considered the reasons set forth by Sullivan for his failure to report to summer encampment on July 10, 1976. But Captain Mann has neither specifically stated that he investigated the cause of Sullivan's absence to "determine if any cogent or emergency reasons existed which prevented" Sullivan from attending nor set forth what acts he performed to ascertain the reasons for Sullivan's absence from camp. AR 135–91(12)(e). Consequently, the Court will hold in abeyance the Defendants' motion to dismiss this claim and will order that an affidavit be submitted by Captain Mann indicating the measures, if any, he took to investigate Sullivan's reasons for not attending the summer encampment. The Court will not rule on this phase of the Defendants' motion until the affidavit and any counter affidavit is filed.

An appropriate order will be entered.