UNITED STATES, Appellee,

v.

Alex A. BARRAZA, Private, U. S. Army, Appellant.

No. 33,802.
CM 435024.

U. S. Court of Military Appeals.

July 17, 1978.

For appellant—*Captain Larry D. Anderson* (argued); *Colonel Robert B. Clarke* (on brief); *Lieutenant Colonel John R. Thornock* (on brief); *Major Benjamin A. Sims.*

For appellee—*Captain Richard A. Kirby* (argued); *Colonel Thomas H. Davis* (on brief); *Lieutenant Colonel R. R. Boller; Major Steven M. Werner* (on brief).

FLETCHER, Chief Judge:

In July of 1975 the appellant, a member of the New York National Guard, was ordered to active duty in the United States Army for a period of approximately 20 months on account of the determination made by his unit commander that his performance in meeting his unit training as-

sembly requirements was unsatisfactory.[1] While on active duty, he was found guilty, by a general court-martial, contrary to his pleas, of possession and distribution of cocaine, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, which were alleged to have occurred in January 1976. The members of his court-martial in April 1976 sentenced him to a bad-conduct discharge, confinement at hard labor for 12 months, forfeiture of $150 pay per month for the same period and reduction to the grade of E-1. A new convening authority, due to the disqualification of the original convening authority, reduced the period of confinement and forfeitures to nine months, but otherwise approved the sentence as adjudged. The Court of Military Review affirmed the findings and this sentence, limiting its unreported opinion to consideration of an issue related to *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), but not relevant to our review of this case.

The appellant argues on appeal, as he did below, that his court-martial had no lawful jurisdiction over his person to try him for these offenses. In particular, he contends that the failure of the Government to comply with essential procedural requirements in his involuntary activation amounted to an unconstitutional denial of administrative due process which invalidated his orders to active duty. *See United States v. Kilbreth*, 22 U.S.C.M.A. 390, 47 C.M.R. 327 (1973). Accordingly, he concludes that he was not properly subject to the U.C.M.J. within the meaning of Article 2, UCMJ, 10 U.S.C. 802, nor could he be lawfully tried by court-martial for drug offenses allegedly committed during the period covered by these invalid orders.

The military judge at the court-martial denied, without stating his reasons, a similar motion to dismiss made by the defense counsel. This occurred after the Government had introduced documentary evidence concerning the involuntary activation and the actual military service of the appellant pursuant to these allegedly invalid orders. The Government, in its final brief, does not challenge these allegations of certain procedural deficiencies in the appellant's activation process. Nevertheless, government appellate counsel argues in the alternative that the conviction should be affirmed. First, he asserts that the appellant's failure to appeal his involuntary activation orders as required by regulations bars him under the doctrine of exhaustion of administrative remedies from challenging the propriety of these orders for the first time at a court-martial for charges unrelated to the call-up. *See McGee v. United States*, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). Secondly, he argues that the conduct of the appellant, under the circumstances of this case, amounted to a waiver of all procedural defects in his activation so as to render the orders valid and the court-martial lawful. *See United States v. Kilbreth, supra*, 22 U.S.C.M.A. at 392, 393, 47 C.M.R. at 329, 330. In view of the Government's position, we believe this case may be resolved on the basis of the merits of these contentions in support of court-martial jurisdiction.

I

The initial argument raised by the Government is that the failure of the appellant to appeal his involuntary activation orders in accordance with pertinent service regulations [2] should bar him from now contesting their propriety as a jurisdictional base for his present court-martial.[3] In substance the Government urges this Court to apply the doctrine of exhaustion of administrative remedies to prevent the appellant from belatedly raising his due process chal-

---

1. See 10 U.S.C. § 673a (1970) as implemented by Executive Order 11366, 3 C.F.R. 676 (1966–70 Comp.) and by Army Regulation 135–91 (June 11, 1968) with subsequent changes.

2. Para. 14b (1), (C 9, April 8, 1971); Para. 14g 1, (C 7, March 25, 1970); and Para. 20 (C 9, April 8, 1971) of AR 135–91.

3. *See Lizzio v. Richardson*, 378 F.Supp. 986, 988 (E.D.Pa.1974); *Mickey v. Barclay*, 328 F.Supp. 1108, 1112 (E.D.Pa.1971); *Metz v. United States*, 304 F.Supp. 207, 212 (W.D.Pa. 1969); *see also Dilloff, N., Involuntary Activation of Reservists*, 63 Ken.L.Rev. 895, 917–18 (1975).

lenges [4] to his activation orders. We simply do not believe it proper to extend the doctrine of exhaustion of administrative remedies stated in *McGee v. United States, supra*, to courts-martial where an accused *constitutionally* challenges involuntary activation orders as a basis for jurisdiction over his person. We find application of this doctrine to be an unsound judicial practice, even though the service person fails to raise these issues before the military administrative agencies provided by service regulations to hear appeals from activation orders.

In *McGee v. United States, supra*, the focal governmental interest justifying the use of the exhaustion doctrine was the necessity of allowing the draft board to make a factual determination and record for the classification of *McGee* as a conscientious objector.[5] The validity of *McGee's* claim to exempt status as a ministerial student or conscientious objector depended on the application of expertise by administrative bodies in resolving underlying issues of fact. The Supreme Court recognized that, as expressly noted in *McKart v. United States*, 395 U.S. 185, 198 n. 16, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), ". . . as to classification claims turning on the resolution of particularistic fact questions, 'the Selective Service System and the courts may have a stronger interest in having the question decided in the first instance by the local board and then by an appeal board, which considers the question anew.' "[6] In this situation,

> [s]uch a default directly jeopardizes the functional autonomy of the administrative bodies on which Congress has conferred the primary responsibility to decide questions of fact relating to the proper classification of Selective Service registrants.[7]

In view of this rationale, the exhaustion doctrine cannot reasonably be construed to apply inflexibly to all challenges to activation orders. Rather, it only applies to those challenges consistent with an understanding of the doctrine's purposes and the particular administrative scheme involved. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."[8] At issue in the appellant's challenge to his activation orders is not a fact question alone, but the legal issues of noncompliance with service regulations and possible prejudice inuring to the appellant. We do not believe the military administrative agencies have any particular expertise, as compared to a court, to determine these questions of constitutional administrative due process in the involuntary activation procedure. Likewise, we note that the service regulations provide that a factual record of compliance with essential procedural requirements must be made by the Government prior to activation orders being issued.[9] Moreover, we have little fear that national guardsmen will frequently and deliberately flout this appeal mechanism because a person would be "fool hardy" not to put the appeals body on notice of a valid claim based on noncompliance with the military's own regulations. *See United States v. Kilbreth, supra.*

Contrary to the blanket assertion of the Government in its brief, we will not blindly apply the exhaustion doctrine in this case to a constitutional challenge to the propriety of involuntary activation orders. We distinguish the decisions which have applied this exhaustion doctrine to involuntary activation cases on the ground that they in-

---

**4.** *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *see also United States v. Kilbreth*, 22 U.S.C.M.A. 390, 47 C.M.R. 327 (1973).

**5.** *McGee v. United States*, 402 U.S. 479, 484–88, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

**6.** *Id.* at 486, 91 S.Ct. at 1570.

**7.** *Id.* at 487, 91 S.Ct. at 1570.

**8.** *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972).

**9.** *See* Para. 12*e*(1)(c), (C 9, April 8, 1971); Para. 13*b* (C 9, April 8, 1971).

volved challenges to the factual determinations which formed the basis for the call-up rather than attacks on compliance with essential procedural requirements in this administrative procedure.[10] No compelling governmental interest has been found by this Court to justify the application of the exhaustion of military administrative remedies doctrine in the present case to absolutely bar constitutional due process challenges to the activation orders. Accordingly, absent such a compelling governmental interest, we cannot inflexibly place this substantial detriment on the criminal defendant for the failure to administratively appeal his involuntary activation orders.[11]

## II

The second legal theory relied on by the Government to establish the validity of the appellant's involuntary activation orders and the lawfulness of the exercise of court-martial jurisdiction over him is the doctrine of waiver of constitutional rights. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Government argues in substance that the conduct of the appellant during his activation and his entrance to active duty clearly demonstrated a total absence of challenge to the activation orders and acceptance of military status. These factors, contends the Government, constitute a knowing and voluntary waiver by the appellant of any constitutional administrative due process objections he might have against the activation orders. *See United States v. Kilbreth, supra*, 22 U.S.C.M.A. at 392, 393, 47 C.M.R. at 329, 330. Accordingly, the Government argues that this waiver cures any due process

irregularities in the activation orders and likewise forecloses attack, on these grounds, against the orders as being invalid for purposes of court-martial jurisdiction for charges unrelated to the call-up. *See United States v. Hall*, 17 U.S.C.M.A. 88, 92, 37 C.M.R. 352, 356 (1967).

Indeed, there is substantial case law[12] which supports a similar proposition with respect to irregularities in the induction proceedings for a draftee.

> [O]ne who undergoes the requisite induction ceremony may thereafter waive any irregularity therein by his submission to military authority, receipt of pay, wearing of the uniform and similar circumstances indicating his acceptance of his new condition as a soldier.

*Id.* at 92, 37 C.M.R. at 356.

■ Moreover, the Supreme Court has held that an individual may waive his fundamental constitutional rights when the particular facts and circumstances surrounding a case show ". . . an intentional relinquishment or abandonment of a known right or privilege."[13] Likewise, the Supreme Court has found that it is not violative of due process to attach reasonable time limitations for the prompt assertion of constitutional rights.[14] In addition to these considerations, the primary society has a constitutional right to be protected by an effective, disciplined and orderly military,[15] and Congress has a constitutional duty to protect military personnel from quasi-civilians moving among them with a known license to commit service-connected crimes

---

10. *See* note 2, *supra*.

11. *See McGee v. United States, supra*, 402 U.S. at 483–85, 91 S.Ct. 1565; *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

12. *Mayborn v. Heflebower*, 145 F.2d 864 (5th Cir. 1944), *cert. denied* 325 U.S. 854, 65 S.Ct. 1087, 89 L.Ed. 1975 (1945); *Hibbs v. Catovolo*, 145 F.2d 866 (5th Cir. 1944), *cert. denied* 325 U.S. 854, 65 S.Ct. 1085, 89 L.Ed. 1974 (1945); *United States v. Mellis*, 59 F.Supp. 682 (M.D.N.C.1945); *see also United States v. Scheunemann*, 14 U.S.C.M.A. 479, 34 C.M.R. 259

(1964); *United States v. Rodriguez*, 2 U.S.C.M.A. 101, 6 C.M.R. 101 (1952).

13. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

14. *Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); cited with approval in *Francis v. Henderson*, 425 U.S. 536, 541, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

15. *In Re Grimly*, 137 U.S. 147, 153, 11 S.Ct. 54, 34 L.Ed. 636 (1890).

without fear of court-martial punishment.[16] Accordingly, we believe, as clearly indicated in this Court's *Kilbreth* opinion, that a waiver of procedural irregularities in an involuntary activation may be accomplished by a reservist under certain circumstances which demonstrate a knowing and voluntary relinquishment of his due process rights.

■ The particular constitutional rights of the appellant which may be subject to waiver are his rights under the Fifth Amendment not to be deprived of his liberty, even at an administrative proceeding,[17] without due process of law. These derivative constitutional rights [18], e. g., sufficient notice, are particularly defined in Army Regulation 135–91 (1968 and subsequent changes). However, this regulation also requires the serviceman to appeal his activation orders within 15 days after receipt of notice of the request for his activation. Due process, for reasons which differentiate the military from the primary society, requires different application of constitutional guarantees than those relating to civilians. *See Sullivan v. Mann,* 431 F.Supp. 695, 698 (M.D.Pa.1977). We construe these regulations to require, at the very least, that the reservist take some steps within a reasonable time period and without the right of counsel to preserve his objection to the call-up based upon due process claims stemming from violations of these regulations. It is not unreasonable to view failure by the appellant to comport with these immediate appeal requirements as evidence of waiver of these due process rights. This is especially true where the reservist is notified and information provided to him as to the pertinent regulations involved, where they may be located for his perusal, and where the documentation supporting his activation may be examined by him. We, of course, do not expect the national guards-man to be a lawyer capable of filing a full legal brief within 15 days so as to avoid the inference of waiver. Nevertheless, he must at the very least put the Government on notice of his objections to the call-up in order later to preserve his claim. In any event, this is but one factor in our waiver analysis, for we must examine the particular facts and circumstances of this case in totality to justify the use of the doctrine of waiver against the appellant. *See United States v. Kilbreth, supra.*

■ The record of trial provides this Court with sufficient information to determine whether the appellant had earlier waived his right to challenge his activation orders, on grounds of constitutional due process, thus foreclosing a later attack on these orders as a jurisdictional base for his court-martial for offenses unrelated to his call-up. It indicates that the appellant received, by certified mail, on May 20, 1975, a letter from the office of the Chief of Staff to the Governor of the State of New York. This letter stated in part:

1. This office has been requested to order you to active duty for 24 months, less any active duty or active duty for training time previously served, for unsatisfactory participation in accordance with the provisions of Army Regulation No. 135–91.

2. Documentation presented by your unit commander is complete and this office has requested assignment instructions from Department of the Army this date. Active duty orders will be issued in approximately 30 days.

3. In the event you wish to appeal your order to active duty by requesting a delay or relief from call to active duty, *you must, within 15 days of receipt of this letter, present a written request for such delay or relief with supporting documentation through your unit commander.*

---

**16.** U.S.Const. art. I, § 8, cl. 14; *see Parisi v. Davidson, supra,* 405 U.S. at 46 n. 15, 92 S.Ct. 815; and *United States v. Noyd,* 18 U.S.C.M.A. 483, 491, 40 C.M.R. 195, 203 (1969).

**17.** *See Keister v. Resor,* 462 F.2d 471 (3rd Cir. 1972) *cert. denied sub nom. Keister v. Froehlke,* 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 151 (1972); *O'Mara v. Zebrowski,* 447 F.2d 1085, 1089 (3rd Cir. 1971).

**18.** *See* note 4, *supra.*

Requests for a delay in reporting for active duty after orders are issued will be considered only for emergencies, to include illness and injury.

4. The procedures for requesting either delay or appeal of order to active duty are contained in paragraphs 16 and 20, respectively, of Army Regulation No. 135–91. This Army Regulation is available at your National Guard unit and the unit commander or full-time technician can explain the proper procedure to be followed in either situation. A copy of this letter is also being furnished to your unit commander for his information.

There is no evidence in the record of trial that any action was taken by the appellant to use this appeal process of which he was clearly notified and which was supplemented by pertinent service regulations. This failure to appeal or to make any effort to notify the proper administrative body of his objections prior to his activation in accordance with regulations was not present in *Kilbreth* and other federal cases,[19] where jurisdiction was found lacking due to a government failure to follow essential procedural requirements in the call-up.

Moreover, the appellant's active duty orders, which he received on May 23, 1975, became effective on or about June 30, 1975. He was assigned to report, on July 8, 1975, to Fort Campbell, Kentucky. There is no evidence that the appellant protested his activation prior to, during, or immediately after his entrance onto active duty. In *United States v. Kilbreth, supra,* the accused evidenced his non-acceptance of his status as a military person by refusing to report for active duty as ordered. Though certainly not requiring such conduct as a means to indicate retention of one's constitutional challenges to activation, we believe that the complete absence of any evidence, of protest, either formal or informal, against these orders by the appellant to any military authorities must also be weighed against him.

In addition, there is no evidence in the record of trial that the appellant, within a reasonable time after reporting for active duty, attempted to secure his release on these constitutional grounds in a Federal civil court by a Writ of Habeas Corpus.[20] Finally, unlike *Kilbreth*, the appellant did not raise his constitutional challenge to his activation orders until 6 months after the call-up, at a court-martial for drug offenses which were unrelated to his initial order to report for active duty.

Under the circumstances of this case, we conclude that such conduct of the appellant constituted a knowing and voluntary waiver of his right to challenge, on constitutional due process grounds, his involuntary activation orders and, concomitantly, his status as a person subject to the Uniform Code. Yet, our decision should not be construed as sanctioning due process violations in the involuntary activation process, nor as indicating a reluctance to entertain similar issues of a constitutional nature on appeal of a court-martial where the appellant's conduct does not so clearly evidence a valid waiver.

The decision of the United States Army Court of Military Review is affirmed.

Judges COOK and PERRY concur.

---

19. *See Schatten v. United States,* 419 F.2d 187, 190, 192 (6th Cir. 1969); *Smith v. Resor,* 406 F.2d 141 (2nd Cir. 1969); *Feeny v. Smith,* 371 F.Supp. 319 (D.Utah 1973); *United States v. Kilbreth, supra.* We do not mean that the availability of appeal lessens in any way the prejudice suffered from any violations of due process prior to it (*cf. Hall v. Fry,* 509 F.2d 1105, 1108 (10th Cir. 1975), and *Febus Nevarez v. Schlesinger,* 440 F.Supp. 741, 743 (D.P.R. 1977)), but rather, the failure to appeal is some evidence of waiver of those rights.

20. *Parisi v. Davidson, supra.*